**In re MANN.**

**No. 10310.**

United States District Court
D. Maryland.

Dec. 5, 1952.

Miles, Walsh, O'Brien & Morris, Seymour O'Brien, Baltimore, for City Bank & Trust Co., and First Trust & Savings Bank.

Venable, Baetjer & Howard, Stuart S. Janney, Baltimore, for Oil City Nat. Bank.

Anderson, Barnes & Coe, Wilson K. Barnes and William Hoffenberg, Baltimore, for bankrupt.

WILLIAM C. COLEMAN, Chief Judge.

This proceeding is before the Court on motion of the alleged bankrupt, Louis

Mann, to dismiss the petition for his adjudication brought by three of his creditors, all banks, namely, The Oil City National Bank, Oil City, Pennsylvania, the City Bank & Trust Company, Reading, Pennsylvania, and The First Trust & Savings Bank, Zanesville, Ohio, the motion being based upon alleged failure of the petitioners' allegations as to indebtedness to meet the requirements of the Bankruptcy Act.

After setting forth that the alleged bankrupt owes debts in excess of $1000 and is not a wage earner or farmer, the petition recites that the petitioners "are creditors of said Louis Mann, having provable claims against him, fixed as to liability and liquidated in amount, amounting in the aggregate, in excess of securities held by them, to Five Hundred Dollars ($500.00) and more." Then follows detailed statements of the nature and amount of the claim of each creditor bank, these statements being identical except as to dates and character and amount of the indebtedness, and may be summarized as follows: That each creditor bank holds one or more overdue promissory notes of The Sherwood Distilling Company upon which there is due and unpaid a stated amount of principal and interest; that each creditor bank holds as security for these notes "certain warehouse receipts representing whiskies owned by said The Sherwood Distilling Company"; that "said claim exceeds the value of said security in an amount greatly exceeding Five Hundred Dollars"; that all of these notes are indorsed individually by the alleged bankrupt, Louis Mann, upon whom demand has been made but payment has been refused; and that he, within four months preceding the filing of this petition, and while insolvent, committed three acts of bankruptcy by making preferential assignments of a certain mortgage and of certain shares of stock, and by permitting a preferential lien on certain of his property which has not been vacated or discharged.

Two grounds are advanced in the alleged bankrupt's motion to dismiss the petition for adjudication: (1) That he is an indorser only on the notes, and therefore only secondarily liable; that the petition fails to allege that the notes were presented to their maker, The Sherwood Distilling Company; that no notice of dishonor was ever given to the alleged bankrupt, or that the notes were protested "in accordance with the applicable provisions of the Negotiable Instruments Law." Lack of protest, however, has not been relied upon, and cannot successfully be, because protest is not required except in the case of foreign bills of exchange. (2) That the petitioning banks do not have provable claims against the alleged bankrupt since there is no allegation in their petition that the warehouse receipts, given as security for the notes, have been liquidated and the proceeds applied to the note indebtedness; in other words, that the banks' claims are not "fixed as to liability and liquidated as to amount" as required by Section 59, sub. b of the Bankruptcy Act, 11 U.S.C.A. § 95, sub. b.

In answer to the first ground for dismissal of the petition for adjudication, namely, that there is no showing that the notes were ever presented to their maker, The Sherwood Distilling Company, and notice of their dishonor given to the alleged bankrupt, Louis Mann, as individual indorser, the petitioning creditors rely upon the following waiver, which is the last of the printed provisions appearing on the face of all the notes: "The undersigned waives demand, notice and protest."

The Negotiable Instruments Act is in force in Maryland. Secs. 14–209, Art. 13, Annotated Code of Maryland, 1951 Ed. Although not disclosed by the pleadings, it is admitted by the parties that all of the seven notes here involved were executed and also individually indorsed by the alleged bankrupt either in Maryland or in Pennsylvania. Since the Uniform Negotiable Instruments Act is also in effect in Pennsylvania, fixing the exact place of execution and indorsement of the notes becomes immaterial. So, in referring to sections of the Act, we will,

for brevity, give only the Maryland Code section reference.

Section 129 of the Act provides: "Notice of dishonor may be waived, either before the time of giving notice has arrived, or after the omission to give due notice, and the waiver may be express or implied." And it is further provided, Section 130, that "Where the waiver is embodied in the instrument itself, it is binding upon all parties; but where it is written above the signature of an indorser, it binds him only." It is the contention of the petitioning creditors that since the waiver of notice in the present case is embodied in the instrument itself it therefore is binding upon Mann, the alleged bankrupt, individually, as indorser. On behalf of Mann, however, it is contended that since, in the waiver, the word "under-signed" is employed and also the singular verb "waives", this indicated that the waiver was intended to, and therefore should be held to apply only to the maker of the notes and not to an indorser.

It is our opinion that the position taken by the petitioning creditors is the correct one. In the first place, the use of the word "under-signed" in the waiver, is not to be interpreted so literally as to apply only to a party or parties whose names actually appear on the instrument *under* or *beneath* the waiver, as opposed to names (as of indorsers) appearing on the reverse side of the instrument. Such interpretation would be in direct opposition to the express wording and intent of Section 130 quoted above. See Brown v. Canal Bank & Trust Co., 5 Cir., 141 F.2d 832. Furthermore, the word "notice" as used in the waiver can refer to no other notice than that of dishonor. To say that the waiver, insofar as notice is concerned, applies to the maker only would render it an entirely useless provision, since the maker of a negotiable note is obviously not a party to whom notice of dishonor is to be given. The maker is the party primarily liable on the instrument. If not a demand note, presentment must be made to the maker on the day it falls due. If the instrument is payable on demand, as are all but one of the seven notes here in issue, presentment must be made within a reasonable time after issue. Sections 90 and 91. It is notice of dishonor by non-acceptance or non-payment by the maker of a note that is required to be given, not to the maker himself, because that would be meaningless since he is the one who has dishonored the instrument, but to each indorser. Section 109.

We find nothing in any other provisions in the notes which is in any way persuasive of a different conclusion from that which we reach. It is true that the word "under-signed" is used in several paragraphs of the notes, but with express reference to the maker only, as for example, in referring to the collateral and additional collateral, and rights and liabilities incident thereto. The fact that the form of the note provides for only one corporate maker, there being only one line for the name of the corporation, has, we believe, no significance in relation to the precise question before us, and this is true even though, as already pointed out, the waiver is phrased in the singular.

Counsel for the alleged bankrupt, as indorser, also seek to rely upon an acceleration clause in the notes which is made applicable upon "the death, failure, insolvency, reorganization, act of bankruptcy * * * of * * * any party hereto", since the three last quoted words are defined in this clause as meaning "the under-signed and any indorsers or guarantor, either jointly or severally." From this phraseology, it is argued that if it had been intended that the waiver should include indorsers, it would have read that "any party hereto waives demand, notice, and protest." Admittedly, the printed waiver clause here in controversy is not clear when read literally, without more. But it must be interpreted in the light of the provisions of Section 130 of the Negotiable Instruments Act which we have above quoted. That section expressly says that "Where the waiver is embodied in the instrument itself, it is binding upon all parties; * * *."

Here, the waiver is certainly embodied in the instrument itself. It appears as one of the printed provisions on the very face of the notes. This waiver provision in the Negotiable Instruments Act is merely a codification of the law merchant that had been in effect for a long period of time. See Williston on Contracts, Rev.Ed. Sec. 1186. We believe that the weight of authority throughout the country interpreting this provision supports our conclusion that the present waiver must be interpreted as embracing waiver by an indorser. In Bell v. Watkins, 344 Pa. 668, 25 A.2d 320, 321, 140 A.L.R. 1249, a decision in 1942 of the Supreme Court of Pennsylvania, a note given by an individual to a bank contained the following provision: "I authorize the holder hereof, if it so desires, to call for additional security, and on *my* failure to respond, or in the event of the non-performance of this promise, or of the terms hereof, this obligation shall be deemed to be due and payable without demand or notice, * * *." The Court held that this provision constituted a waiver by an accommodation indorser of notice of dishonor, within the meaning of the waiver clause in the Negotiable Instruments Act. The Court said, 344 Pa. at page 671, 25 A.2d at page 322: "We must determine what the parties meant by what they said and, as required by a familiar principle of construction, must, if possible, give effect to all the words used. The words 'this obligation shall be deemed to be due and payable without demand or notice' include and relate to the principal obligation to pay the note on demand after date, and were not necessary to accelerate the maturity of the note or to enable the holder to resort to the collateral. That subject was covered by the specifically granted authority to sell, etc., 'without demand, advertisement or notice,' etc. We must therefore reject the appellee's contention that if the words were 'meaningless as to the maker,' they are ineffective against the indorser. While, as between holder and maker, waiver by the maker was unnecessary, the parties apparently considered it important to obtain the express waiver of the indorser who was also a party to the instrument, and, to accomplish it, inserted the words which brought the instrument within the provisions of Section 110. Compare Annville Nat. Bank v. Kettering, 106 Pa. 531, 535, 51 Am.Rep. 536; and see Bratten v. McKelvey, 1939, 63 Ohio App. 116, 25 N.E.2d 366 for a collection of cases on the subject."

To the same effect is Appleton & Eldredge, Inc. v. McCarthy, 138 A. 111, 5 N.J.Misc. 682, decided in 1927. In this case the note was also that of a single maker, with the provision that "The undersigned hereby waives presentment, protest, notice of protest * * *." An indorser of a note resisted payment on the ground that he had not received notice of dishonor by the maker and therefore was discharged. The New Jersey Supreme Court, however, held that by virtue of the waiver provision in the Negotiable Instruments Act which was in effect in New Jersey, the waiver contained in the body of the note was applicable to an indorser thereon. The Court said, 138 A. 112, 5 N.J.Misc. 684: "Section 110 of the Negotiable Instruments Act (volume 3, C.S.1910, p. 3747 [N.J. S.A. 7:2–110] ) provides that: 'Where the waiver is embodied in the instrument itself it is binding upon all parties; but where it is written above the signature of an indorser, it binds him only.' The waiver in the note sued on was embodied in the instrument itself. It therefore follows that the appellant was liable as an indorser on the note. Crawford's Negotiable Instruments Law p. 100; Owensboro Savings Bank [& Trust Co.'s Receiver] v. Haynes, 143 Ky. 534, 136 S.W. 1004."

This decision was affirmed without opinion by the New Jersey Court of Errors and Appeals, 104 N.J.L. 431, 140 A. 918. See also Beutel's-Brannan Negotiable Instruments Law, 7th Ed., pp. 1090–1094, and cases therein collected and analyzed.

The numerous cases cited by counsel for the alleged bankrupt are not in point

because in each of them either the form of the instrument or the waiver therein, or both, were different from the form of the instruments and waiver here involved. Special emphasis is placed upon Farmers' & Merchants' State Bank v. H. E. Behrens Mfg. Co., 50 N.D. 850, 198 N.W. 467, a decision in 1924 of the Supreme Court of North Dakota. There, an indorser on a note resisted payment on the ground of failure to give him notice of dishonor. On the face of the note were printed the words: " 'The drawer waives presentment for payment, protest, notice of protest, and nonpayment of this note.' " It was contended that, notwithstanding the limited nature of this waiver, it applied under the waiver provision of the Negotiable Instruments Act to indorsers, because it was on the face of the note. However, the Supreme Court of North Dakota held to the contrary, saying, 198 N.W. at page 468: "We are of the opinion that the printed waiver in the body of the note did not extend to the defendant as indorser. As an express waiver it applied only to the drawer who manifestly could be none other than the maker. 8 C.J. 701. See section 110, Unif.Neg.Inst.Act."

It is to be noted that the waiver in this North Dakota case is by its terms *expressly restricted to the drawer* whom the court apparently construed as meaning the maker. Correctly speaking, there is no drawer of a promissory note, as there is of a check or bill of exchange. As applied to the maker of the note in the North Dakota case, the waiver is not entirely meaningless, because it embraces presentment for payment, i. e. presentment to the maker. We do not mean to say, because we do not so interpret the waiver provision of the Negotiable Instruments Act, that *every* waiver becomes applicable to indorsers whenever it is on the face of the instrument, that is, whenever it "is embodied in the instrument itself". Of course, a clause so embodied may be so worded as to render it inapplicable to certain parties, that is to say, if it in terms expressly indicates the party or parties to whom the waiver

extends, in which event the waiver applies to him or them only. But in the case before us, we do not believe that the printed waiver is to be given such limited construction under the Negotiable Instruments Act. While, of course, not conclusive, nevertheless, the fact that Louis Mann signed twice as president of The Sherwood Company, the maker and indorser as well, of the note, and then signed individually as an indorser, adds weight to the inference that because of his dominant position with his company, Mann did, in fact, intend to waive *all* formalities incident to perfecting the right to payment of the notes when due. Notice of dishonor may be impliedly or expressly waived. Section 129.

We turn now to the second and last ground advanced in the alleged bankrupt's motion to dismiss the petition for adjudication. This ground is that the petitioning banks do not have provable claims against the alleged bankrupt, since they fail to allege in their petition that the warehouse receipts securing the notes have been liquidated and the proceeds applied to the note indebtedness; that is to say, that the banks' claims are not "fixed as to liability and liquidated as to amount", as required by Section 59, sub. b of the Bankruptcy Act, 11 U.S.C.A. § 95, sub. b.

Section 59, sub. b of the Bankruptcy Act reads: "Three or more creditors who have probable claims *fixed as to liability and liquidated as to amount* against any person which amount in the aggregate in excess of the value of securities held by them, if any, to $500 or over; or if all of the creditors of such person are less than twelve in number, then one of such creditors whose claim equals such amount may file a petition to have him adjudged a bankrupt." (Emphasis supplied.) Prior to 1938 this section was the same as the aforegoing, except for the clause above italicized that claims must be fixed as to liability and liquidated as to amount, which was added among the amendments of that year. The primary object of this amendment is to obviate the necessity of de-

termining the amount of each claim represented by petitioners at the inception of the bankruptcy proceeding. It is a requirement in addition to provability. See Remington on Bankruptcy, 5th Ed., Vol. 1, Sec. 204, page 310. However, the contention is made on behalf of the alleged bankrupt by his motion to dismiss the creditors' petition for adjudication that, as a result of this amendment to the Act, since a secured creditor has a bankruptcy claim only for the difference between the amount of his claim and the value of his security, his claim is not "liquidated", and hence he cannot file an involuntary petition unless he first waives is security.

■ We do not consider this contention valid. All that was intended by the amendment to Section 59, sub. b was to harmonize it with Section 63, 11 U.S.C.A. § 103, to which, by amendment in 1938, was added to the category of provable debts, contingent debts and contingent contractual liabilities as well as certain other types of claims not provable under the Bankruptcy Act prior to the 1938 amendment. To give to Section 59, sub. b the interpretation claimed by counsel for the alleged bankrupt would be to bar every creditor with security from becoming a petitioning creditor, unless he first abandons or waives his security. To adopt such interpretation would, we believe, be entirely out of harmony with the fundamental purpose of Section 59, sub. b and related sections, and would render meaningless the words in Section 59, sub. b which were retained after its amendment in 1938, namely, "in excess of the value of securities held by them, if any, to $500 or over". Parenthetically, it may be pointed out that the petitioning banks in the present case have been under injunction of this Court, at the instance of the alleged bankrupt, not to liquidate their collateral, because of alleged duplication of some of the warehouse receipts securing the notes, by other outstanding receipts. The present petition follows the precise language of Form 5 as promulgated by General Order in Bankruptcy of the Supreme Court, issued January 16, 1939, 11 U.S.C.A. following section 53, and is therefore sufficient. See Collier on Bankruptcy, 14th Ed. Sec. 18, page 25.

We find no support for the contention made except in a dictum, upon which counsel for the alleged bankrupt relies, in In re Central Illinois Oil & Refining Co., 133 F.2d 657, a decision of the Court of Appeals for the Seventh Circuit, in 1934. There it was held that a conditional seller's filing of an involuntary petition in bankruptcy against a buyer on a $5,-760 claim, without mentioning the seller's security under the conditional sales contract, amounted to a waiver of the seller's lien under such contract, pursuant to the provisions of Section 59, sub. b of the Bankruptcy Act as amended in 1938. The point directly at issue in the present case was not decided. However, at the conclusion of the opinion of the Court in that case, Circuit Judge Evans said, 133 F.2d at page 660: "Since the amendment of 1938, it is doubtful if a single creditor whose claim is secured, even though the debt greatly exceeds the security, may qualify as one who can file an involuntary petition in bankruptcy without giving up his security. The Act, 11 U.S.C.A. § 95, requires that petitioner's claim be '*fixed* as to liability and *liquidated* as to amount.' Inasmuch as a secured creditor has a petitioning claim only for the difference between the amount of the debt and the value of the security, his claim is not liquidated. He therefore must fail to measure up to the qualifications of a petitioning creditor in an involuntary petition unless he waive his security." We construe this statement as dictum in the case, and in any event, not persuasive authority.

For the aforegoing reasons we find no merit in the motion of the alleged bankrupt to dismiss the petition for his adjudication and, therefore, this motion must be dismissed.