**In re LAWTON.**
**Bankr. No. 6844.**

United States District Court
S. D. West Virginia,
Charleston Division.

March 5, 1954.

Jackson, Kelly, Holt & Moxley, Thomas B. Jackson, Andrew L. Blair, E. D. Knight, Jr., Charleston, W. Va., Clarence J. Benson, Charleston, W. Va., for petitioning creditors.

J. Zane Summerfield, William R. Laird, III, Fayetteville, W. Va., William G. Thompson, Montgomery, W. Va., for alleged bankrupt.

PAUL, District Judge, sitting by designation in the Southern District of West Virginia.

In this matter three creditors (or alleged creditors) of W. D. Lawton have filed a petition seeking to have him adjudicated a bankrupt. Lawton resists adjudication and has filed an answer in which he denies the commission of any acts of bankruptcy and denies that he was insolvent when the alleged acts were committed. He also questions the amount of the liability asserted by two of the petitioning creditors, and denies any liability to New River Banking and Trust Company, the third petitioning creditor.

The allegations in the petition regarding the alleged debt owing the New River Bank and Trust Company (hereafter called New River) and the denials in the answer raise the question as to whether this creditor is qualified as a petitioning creditor under Section 59, sub. b of the Bankruptcy Act, 11 U.S. C.A. § 95, sub. b, which provides that the creditors filing an involuntary petition must have "provable claims liquidated as to amount and not contingent as to liability".

An examination of the petition indicates that the claim of New River grows out of the complicated transactions by which a concern engaged in the business of selling motor vehicles undertook to finance its operations. This concern, which has heretofore been adjudicated a bankrupt, was known as Lawton-Jasper Motors, Inc., and presumably W. D. Law-

ton was one of its officers. It is impossible and unnecessary to set out here the detailed description of New River's claim, the recital of which occupies four typewritten pages in the petition. However, the substance of the claim is alleged as follows: That New River holds thirty sight drafts which were drawn by Lawton-Jasper upon Beckley Industrial Savings & Loan Company (hereafter referred to as Beckley) and which were delivered by Lawton-Jasper to New River and credited by New River to the account of Lawton-Jasper. That as collateral security for the payment of twenty-two of these drafts Lawton-Jasper executed its negotiable notes in the same amount as the drafts, payable to the order of Beckley, and at the same time executed and delivered, as security for payment of the notes, chattel trust deeds purporting to convey certain motor vehicles which were represented by Lawton-Jasper and W. D. Lawton to be worth the amount of the drafts and notes. That eight of said drafts were accompanied by and secured by conditional sales contracts on automobiles sold by Lawton-Jasper.

It is further alleged that the drafts with their collateral were presented to New River in the usual course of its banking business and, upon the faith and credit of the drafts and upon the purported security of the collateral, New River credited the face amount of the drafts to the checking account of Lawton-Jasper, without first receiving payment of the drafts from Beckley. That thereafter Beckley refused, and still refuses, to honor and pay any of the drafts, the aggregate amount of which is $206,-761.00. It is then asserted that the drafts, together with the purported collateral security, had been represented by Lawton to be bona fide transactions adequately secured, when as a matter of fact they were not bona fide and the purported collateral was inadequate and in most cases false and fraudulent. The basis of the claim against Lawton is stated in these words:

"By reason of the above mentioned fraudulent transactions, which were carried out and made by said W. D. Lawton he is personally liable to the petitioner, New River, in the aforesaid sum * * *."

It seems that the asserted proposition is that New River was induced to take the drafts upon false and fraudulent representations made by Lawton and that therefore Lawton is personally liable for the loss occasioned by his fraud.

I am of opinion that the claim of New River is not a claim "liquidated as to amount and not contingent as to liability" within the intendment of the statute, Section 59, sub. b of the Bankruptcy Act, 11 U.S.C.A. § 95. Prior to 1952 the language of Section 59, sub. b referring to claims necessary to support an involuntary petition required that they be "provable claims fixed as to liability and liquidated as to amount". The change in phraseology made by the amendment of 1952 was due to the fact that Section 61, sub. a(3) also uses the term "fixed liability" and it was desired to avoid confusion as between the respective sections. Hence the change from "fixed" to "not contingent." (See House Report No. 2320, 82d. Congress, 2d. Sess.) The petitioning creditor agrees that so far as this case is concerned the change is without significance.

In the instant case it is not asserted by New River that Lawton was an endorser of the drafts or executed any guaranty or other writing obligating himself to their payment. The charge is that Lawton perpetrated a fraud upon the creditor by making false representations which induced it to advance money on the drafts. Fraud is a tort redress for which is by an action for damages. If New River were to proceed against Lawton on account of the latter's alleged fraud, the suit would not be upon the drafts which, so far as is alleged, Lawton has never obligated himself to pay. The action would be for damages incurred because of the fraud. It is true that in such an action the measure

of damages sought would be the amount of the drafts which New River has lost: But this does not alter the fact that the drafts themselves are not obligations of Lawton and that no liability could be established against him except upon proof of fraud established with that strong and convincing showing that is always required where fraud is the basis of an action.

It is probably well to point out here that the provisions of Section 59, sub. b, 11 U.S.C.A. § 95, must not be confused with those of Section 57, 11 U.S.C.A. § 93, which deals with the proof and allowance of claims in the course of administering the bankrupt's estate. Under Section 57, sub. d it is provided that unliquidated or contingent claims shall not be allowed except after compliance with certain conditions. The implication is that such claims are provable if the conditions are complied with. But the fact that a claim may be provable in the course of a bankruptcy proceeding does not in itself permit it to be used as the basis for an involuntary petition against a debtor. In the latter case the claim must be not only provable but must also be liquidated in amount and not contingent as to liability at the time the petition is filed. In Collier's Bankruptcy Manual (1948), p. 576, in discussion of Section 59, sub. b (prior to the 1952 amendment) the author says: "In addition to the requirement of provability it is necessary that the petitioning creditor's claim be 'fixed as to liability and liquidated as to amount.' "

The reasons for this distinction are obvious. Section 57 deals with proof and allowance of claims *after the debtor has been adjudicated a bankrupt*, and permits an unliquidated or contingent claim to be allowed under certain conditions. But this is a different proposition from allowing the same sort of claim to be used to force a person into bankruptcy against his will. The situation here is that New River considers that Lawton is liable to it in damages arising from the fraudulent conduct of Lawton. But it seems clear that whether any such liability actually exists can be determined only in a plenary suit, which will almost certainly be seriously contested and the outcome of which cannot be foretold. Claims which are uncertain, either as to the existence of liability or as to the amount thereof, ought not to be used to force persons into bankruptcy to the consequent injury of their standing and credit in the business community. As said in In re Garrett & Co., 7 Cir., 134 F.2d 227, 228, the purpose of restricting the qualified petitioning creditors to certain designated groups was that, "It lessened the chances of the harassing of debtors by creditors whose claims were neither fixed nor liquidated."

And see In re Silver, D.C., 109 F.Supp. 200, affirmed in 7 Cir., 204 F.2d 259, in which, 109 F.Supp. 203–204, various definitions, both lay and legal, of the terms "liquidate" and "liquidated debt" are recited, with none of which does the claim of New River accord.

The petitioning creditor here cites the case of In re Beechwood, D.C., 36 F. Supp. 140, 142, to support its role of a petitioning creditor. Without expressing either agreement or the contrary with the holding in that case, it may be pointed out that the opinion there clearly indicates one very material difference with the instant case. The Court, discussing the nature of the questioned claim, after stating that the debt as alleged was not distinguishable from one created by reason of goods sold and delivered, said further: "A tortious quality, indeed, enters into the nature of the claim, because it arises out of the alleged conversion by Beechwood. However, it is *not the type of tort that must await juridical award to fix liability and the amount of damage * * *.*" (Italics supplied.) This is sharply different from the claim of New River, the very existence of which requires that there first be a determination, in an appropriate legal proceeding, that a fraud was perpetrated on the creditor.

I am of opinion that the claim of New River is not one which permits it to be a petitioning creditor. The result is the

petition seeking to have Lawton adjudged bankrupt must be dismissed for the reason that the petition is not presented by the necessary number of qualified creditors.