In the Matter of Howard C. **HAYES** and Stanwood P. Whiteley, co-partners doing business in the name and style of Hayes & Whiteley, and Hayes & Whiteley Enterprises, a partnership of the Gastineau Corporation and the Chichagof Corporation.

**No. 206.**

District Court, Alaska
First Division, Juneau.
Jan. 19, 1955.

Wm. L. Paul Jr. and John S. Mansuy, Jr., Juneau, Alaska, for petitioners.

Robert Boochever, of Faulkner, Banfield & Boochever, Juneau, Alaska, for Hayes and Whiteley.

Howard D. Stabler, Juneau, Alaska, for receiver.

FOLTA, District Judge.

This is a proceeding to have Hayes and Whiteley Enterprises, the insolvency of which is admitted, declared a bankrupt. The petition as to Hayes & Whiteley individually has been dismissed.

The alleged bankrupt is engaged in the logging business, with the Columbia Lumber Company and its subsidiaries its principal customers. After it became involved in financial difficulties, the Columbia Lumber Company and other creditors, on August 24, 1954, with the consent of the bankrupt, procured the appointment of a receiver under the provisions of Sec. 36–1–141 of the Alaska Code to operate the business. On October 26, 1954, the petitioners Evans, Foxhill and Bates, filed their lien claims for labor in the amounts of $5,000, $2,750, and $5,918 respectively.

In his answer, filed on behalf of the bankrupt with the consent of the Court, the receiver alleges that the petitioners are not qualified under Sec. 59, sub. b of the Bankruptcy Act, 11 U.S. C.A. § 95, sub. b, and that in any event no act of the bankrupt as defined in Sec. 3, sub. a of that Act, 11 U.S.C.A. § 21, sub. a, has been committed. Sec. 59, sub. b provides that:

> "Three or more creditors who have provable claims liquidated as to amount and not contingent as to liability against any person which amount in the aggregate in excess of the value of securities held by them, if any, to $500 or over, * * * may file a petition to have him adjudged a bankrupt."

In support of the first contention it is argued that since the claims of the petitioners are fully secured they cannot qualify as petitioning creditors. How-

ever, it is obvious that under Sec. 26–5–3 of the Alaska Code the right to a lien extends only to wages earned in the six months preceding the filing of the claims on October 26, 1954, from which it follows that the petitioners' claims extending over 1953 and 1954 are, at most, only partially secured. It is undisputed that at the close of 1953 there were due the petitioners the amounts of $573, $2,311.80 and $4,930.11. Since the right to a lien is given only for the six months antedating the filing of the lien claim it is clear that the foregoing amounts are unsecured and in excess of the statutory minimum.

■■ The receiver, however, insists that the claims cannot be split and that they are not liquidated, citing In re Central Illinois Oil & Refining Co., 7 Cir., 133 F.2d 657, 660, where the Court said by way of dicta:

"Since the amendment of 1938, it is doubtful if a single creditor whose claim is secured, even though the debt greatly exceeds the security, may qualify as one who can file an involuntary petition in bankruptcy without giving up his security. The Act [§ 59, sub. b], 11 U.S.C.A. § 95 [sub. b], requires that petitioner's claim be 'fixed as to liability and liquidated as to amount.' Inasmuch as a secured creditor has a petitioning claim only for the difference between the amount of the debt and the value of the security, his claim is not liquidated. He therefore must fail to measure up to the qualifications of a petitioning creditor in an involuntary petition unless he waive his security."

It appears, however, that dicta metamorphosed into rule in that jurisdiction, In re Silver, D.C., 109 F.Supp. 200, affirmed 7 Cir., 204 F.2d 259, and is recognized as such in 6 Am.Jur. 675, Sec. 189. But the soundness of the rule has been questioned in In re Mann, D.C., 117 F.Supp. 511. Irrespective, however, of what may be said for or against it, its application is limited to cases in which the claim is indivisible and the security inadequate. Whether the instant case is of that kind depends on the meaning of "claim" which, it may be noted in passing, is not included among the terms defined in Sec. 1 of the Bankruptcy Act, 11 U.S.C.A. § 1. The cases themselves must therefore be examined. In Continental Motors Corporation v. Morris, 10 Cir., 169 F.2d 315, 316, the Court said: "We think the word 'claim' is used in the sense of cause of action or ground for liability." Used in that sense it is clear that there is only one claim for the wages due. The general rule is that in an action to recover wages the entire amount due must be sued for, 1 Am.Jur. 490, Sec. 109, but it is an incident of personal service contracts that a cause of action accrues each time a pay period is passed over. In the instant case this would be presumably at the end of each month or at the latest by the end of the logging season in December, 1953. That the petitioners held, at the close of 1953, unsecured claims (causes of action) aggregating well over $500 is clear. True, it may be argued that substantively this cause of action merged in the greater one upon the termination of employment in 1954, but I am inclined to the view that if a part of the segmented cause of action is liquidated and unsecured it meets the qualification test of Sec. 59, sub. b. To hold that a petitioner who was qualified in 1953 would become disqualified by continuing to work in 1954 and by perfecting a lien for part of the wages subsequently earned would be a grave injustice, where the petitioners possessed qualifying claims well above the statutory minimum as far back as 1953. This is sufficient to satisfy the requirements of Sec. 59, sub. b.

■ The conclusion thus reached is in harmony with the purpose behind the 1938 amendment to Sec. 59, sub. b. The requirement that the claim must be "fixed as to liability and liquidated as to amount" was to obviate the "necessity of liquidating a claim in order to determine whether the statutory minimum under Sec. 59b had been sustained." 3

Collier on Bankruptcy, 14th ed., 548 Sec. 59.01.

Having determined that the petitioners are qualified under Sec. 59, sub. b and insolvency being admitted, the question whether an act of bankruptcy has been committed remains for consideration. The petitioners contend that the appointment of the receiver with the consent of the bankrupt constitutes an act of bankruptcy within the meaning of the following language of Sec. 3, sub. a (5):

> "While insolvent or unable to pay his debts as they matured, procured, permitted, or suffered voluntarily or involuntarily, the appointment of a receiver or trustee to take charge of his property."

The receiver contends that the receivership is special, temporary, and not the type of liquidating receivership contemplated under Sec. 3, sub. a (5).

The question presented turns on whether the appointment of the receiver under Sec. 36–1–141 of the Alaska Code constitutes a special or a general receivership. An examination of the order appointing the receiver indicates that all the property of the business was turned over and that it was for the benefit of all creditors, but the order is silent as to liquidating the business. It is noteworthy, however, that dissolution is one of the alternatives contemplated in Article 12 of which Sec. 36–1–141 is a part.

I am of the opinion that a general equity receivership to continue, if possible, an insolvent business, is comprehended by the definition of the 5th act of bankruptcy in Sec. 3.

For the most part the cases dealing with the question of the type of receivership that constitutes an act of bankruptcy do not distinguish between a receivership to continue the business and one to liquidate the business, but concern themselves primarily with the question of insolvency, In re Wm. S. Butler & Co., 1 Cir., 207 F. 705, 711; In re Luxor Cab Manufacturing Corporation, 2 Cir., 25 F.2d 644, in which the Court said that if the bankrupt is insolvent the statute makes no distinction between a temporary and permanent receiver. See also 1 Collier on Bankruptcy, 14th ed., 486 Sec. 3.501 n. 21.

The conclusion would then seem warranted that a general receiver includes both the liquidating and the "conservation" receiver. Decisions holding the receivership to be special rather than general turn on the circumstance that, not all the debtors' property was surrendered, Elfast v. Lamb, 2 Cir., 111 F. 2d 434; Otis Elevator Co. v. Monks, 1 Cir., 191 F.2d 1000; or that it was a foreclosure receivership, Duparquet Huot & Moneuse Co. v. Evans, 297 U.S. 216, 56 S.Ct. 412, 80 L.Ed. 591; Standard Accident Ins. Co. v. E. T. Sheftall & Co., 5 Cir., 53 F.2d 40, 41, in which the Court said,

> "In view of the general purposes of the Bankruptcy Act we understand a general receiver to be referred to, and not one for specially described property, as a mortgage foreclosure or an effort to enforce some other lien against specific property"

and have not distinguished, as the receiver urges, between a general consent receivership to keep alive an insolvent business and one to liquidate it.

Accordingly, I conclude that the petitioners are qualified, that an act of bankruptcy has been committed, and that Hayes and Whiteley Enterprises should be adjudged bankrupt. The conclusion reached makes it unnecessary to pass upon the question whether the second act of bankruptcy was committed.