In the Matter of WALTON PLYWOOD, a limited partnership, and Richard E. Walton, a/k/a R. E. Walton (whose wife is Peggy-Paige Walton), and J. H. Fletcher (whose wife is Florence W. Fletcher), General Partners, Alleged Bankrupts.

No. 50795.

United States District Court
W. D. Washington, N. D.
Jan. 27, 1964.

Schweppe, Reiter, Doolittle & Krug, Seattle, Wash., for bankrupts.

Lenihan & Ivers, Seattle, Wash., for petitioning creditors.

SWEIGERT, District Judge.

This is a Petition for Review by the bankrupts hereinafter named, of an Order of Adjudication of Bankruptcy entered by Millard P. Thomas, Referee in Bankruptcy, on February 7, 1963, and of the Findings of Fact and Conclusions of Law made in support thereof.

On October 19, 1962, a petition in involuntary bankruptcy was filed by two creditors, (1) Washington Plywood Co., and (2) Harold Larson, William Nolan and Fred V. Ness against Walton Plywood, a limited partnership and Richard E. Walton and J. H. Fletcher, general partners thereof.

The basis for the claims asserted by the two creditors was a judgment entered by the Superior Court of Snohomish County, State of Washington in Larson v. Walton, Case No. 71332.

As relevant here, this judgment provided:

1. Paragraph First: Judgment in favor of Washington Plywood Co., Inc., and against R. E. Walton and J. H. Fletcher, among others, individually, jointly and severally, in the amount of $322,004.51.

2. Paragraph Second and Third: Judgment in favor of Washington Plywood Co., Inc., and against Walton Plywood, R. E. Walton, J. H. Fletcher and their marital communities, jointly and severally, in the amount of $3,518,677.09, subject to an offset in paragraph Fourth in the amount of $942,391.75.

3. Paragraph Eighth: Judgment in favor of Washington Plywood Co., Inc., and Harold Larson, William Nolan and Fred V. Ness, and against Walton Plywood, R. E. Walton and J. H. Fletcher, among others, individually, jointly and severally, for costs later fixed at $1,348.-05.

An appeal from each of these judgments was taken to the Supreme Court of the State of Washington, and is currently pending there.

On said appeal certain arrangements were made by the judgment creditors under Rule 23, Washington Supreme Court, for a supersedeas of said judgment. These arrangements will be hereinafter set forth.

The issues presented by the Petition for Review are:

(1) Were the judgments in fact superseded?

(2) Whether, if superseded, the judgment claims became "contingent as to liability" within the meaning of Bankruptcy Act, Sec. 59, sub. b, 11 U.S.C. § 95, sub. b.

(3) Whether two petitioning creditors were sufficient within the meaning of Sec. 59, sub. b, and the related issues whether the bankrupts had less than twelve creditors, as found by the Referee, or had twelve or more creditors, as contended by petitioner, and whether the Referee erred in excluding three creditors for the purpose of this computation upon the grounds set forth in Sec. 59, sub. e(4) and (5).

(4) Whether upon computing the number of creditors for the purpose of determining how many creditors must join in the petition, creditors, who have claims against the general partners thereof, should be counted *once,* as counted by the *Referee,* or *twice* as contended by petitioners.

## (1) WERE THE JUDGMENTS IN FACT SUPERSEDED?

Petitioners contend that the judgment was in fact wholly superseded—as to Paragraph First and Eighth by a Supersedeas Bond filed by defendants and, as to Paragraph Second and Third by a certain "other security" order of the Superior Court—and that the Referee erred in finding and concluding that Paragraph Eighth of the judgment was not in fact covered or superseded by the supersedeas bond.

Rule 23 of the Washington Supreme Court provides that wherever an appellant desires a stay of proceedings on appeal, he may present a supersedeas bond; that the supersedeas bond, whether or not combined with the bond for costs on appeal, shall be conditioned for the satisfaction of the judgment in full, together with the interest thereon; that when the judgment is for the recovery of money not otherwise secured, the amount of the bond shall be fixed at such a sum as will cover the whole amount of the judgment remaining unsatisfied, together with interest thereon, unless the Court, after notice and hearing and for good cause shown, fixed a different amount or orders security other than bond; that if the supersedeas bond is intended to stay proceedings on only a part of the order, judgment or decree appealed from, it shall be varied as circumstances may require to accomplish the purpose desired.

On September 21, 1962, all of the defendants named in Paragraph First of the judgment executed a supersedeas and cost bond on appeal, (Ex. 1A of Petitioning Creditors), as principals, with General Insurance Company of America as surety, providing that they would be firmly bound to Washington Plywood Co., the additional plaintiff, "in the sum of $322,004.51 plus interests and costs", the condition of the bond being further stated to be that, whereas Washington Plywood Company recovered a judgment against said defendants "for the sum of $322,004.51, plus interest and costs, in Paragraph First of said judgment", now, therefore, if the principals "shall pay Washington Plywood Co., Inc., all costs and damages that may be awarded against these defendants on the appeal, or on the dismissal thereof, and shall satisfy and perform the judgment or order appealed from in full, together with interest thereon, if for any reason the appeal is dismissed or the judgment affirmed, then this obligation to be void, otherwise to remain in full force and effect."

On the same day, September 21, 1962, the defendants also deposited $300 in cash, in lieu of cost bond on appeal, pursuant to Washington Supreme Court Rule 22 (See Respondent's Ex. 8).

On October 1, 1962, the Superior Court, Snohomish County, made an order pursuant to Rule 23 (the portion thereof providing for "security other than bond"), granting a motion of defendants for fixing security to stay proceedings on appeal (Ex. 1B of Petitioning

Creditors), and ordering defendants to transfer all of their non-exempt property into a trust pending determination of the appeal and staying as of October 1, 1962, all proceedings to enforce Paragraphs Second and Third of the judgment.

This particular portion of Rule 23, pursuant to which this security order was made with respect to Paragraphs Second and Third of the judgment, is identical with a provision of Rule 73(d), F.R.Civ.P., and was designed to cover cases in which judgment debtors could obtain a stay of judgments awarded against them for such enormous amounts which would otherwise preclude the possibility of providing a supersedeas bond. (See, 24 Minn.L.Rev. 1 (1939).

■ It may have been the purpose of the defendants to supersede all paragraphs of the judgment, including Paragraph Eighth, by means of the supersedeas bond and the "other security" order, together with the cash deposit of $300 for costs on appeal, and such purpose should be recognized and given effect if such a construction is reasonably possible.

Petitioners contend that the reference in the bond to "costs" must be deemed to refer to the trial court costs awarded in Paragraph Eighth of the judgment because defendants had separately deposited costs on appeal.

However, notwithstanding such separate deposit, the bond falls short of covering the costs, $1348, awarded by the trial court in Paragraph Eighth of the judgment.

The bond expressly refers only to Paragraph First of the judgment (for $322,004.51) and the amount of the bond was precisely fixed in that amount.

It is true that the whereas clause of the bond recites that Paragraph First of the judgment was awarded for $322,-004.51 "plus interest and costs". However, this recital is inaccurate because Paragraph First does not contain any reference to either costs or interest.

In any event the effective "condition" of the bond refers only to costs awarded "on the appeal" *and* to the judgment, (i. e., Paragraph First for $322,004.51) "together with interest"—this latter provision being obviously intended to comply with Rule 23 requiring that a supersedeas bond "be conditioned for the satisfaction of the judgment in full, together with interest thereon."

■ Thus, there is no effective provision covering Paragraph Eighth of the judgment and, further, there is no reference to Larson, Nolan or Ness to whom, along with Washington Plywood Company, the Paragraph Eighth costs were awarded. The reference is only to Washington Plywood Company, the sole judgment creditor under Paragraph First.

We conclude, therefore, that the referee did not err in holding that Paragraph Eighth of the judgment was not in fact superseded.

■ However, in our view of the matter, this holding of the referee is immaterial because we are of the opinion that, even if the entire judgment be deemed to have been in fact superseded by the arrangements made under Rule 23, such fact would not render the judgment claims of the petitioning creditors "contingent as to liability" within the meaning of Sec. 59, sub. b.

(2) EVEN IF SUPERSEDED, WOULD THE JUDGMENT CLAIMS BECOME "CONTINGENT AS TO LIABILITY" WITHIN THE MEANING OF SEC. 59, SUB. B?

Bankruptcy Act, Sec. 59, sub. b, 11 U.S.C. § 95, sub. b), as it now stands, provides that petitions may be filed by "three or more creditors who have provable claims not contingent as to liability * * * amounting in the aggregate to $500 in excess of the value of any securities held by them * * *."

Sec. 59, sub. b required only that the petitioning creditors be creditors who have provable claims.

In 1938 the section was amended to provide that the petitioning creditors shall "have provable claims fixed as to liability and liquidated as to amount * * *."

In 1952 the Section was again amendable claims liquidated as to amount and not contingent as to liability * * *."— the form of the section when the petition here in question was filed.

In 1962 the section was again amended to read that they shall "have provable claims not contingent as to liability * * * "—the present form of the section.

■ So far as the supersedeas arrangements in the pending case constituted "securities" for the judgment claims of the petitioning creditors, the Referee found (Finding XVII) that the petitioning creditors have waived the security thereof both expressly and by implication by their failure to mention such security in the petition in involuntary bankruptcy. See, Morrison v. Rieman, 249 F. 97 (7th Cir. 1917). This waiver disposes of the possible disqualification of the petitioning creditors under the "securities held" provision of Sec. 59, sub. b and no question is raised by petitioners on this point.

Nor do petitioners raise any question concerning the "provability" of the claims of the petitioning creditors within the meaning of Sec. 59, sub. b. Bankruptcy Act, Sec. 63, sub. a(1), 11 U.S.C. § 103, sub. a(1), provides that a fixed liability, as evidenced by a judgment or an instrument in writing, absolutely owing at the time of filing the petition, whether then payable or not, is a provable bankruptcy claim.

Petitioners do contend, however, that the petitioning creditors are not qualified to file under Sec. 59, sub. b, as amended in 1952, because their claims became "contingent as to liability" upon the filing of the appeal with supersedeas bond and order under Rule 23.

So far as we have been able to ascertain, this precise question has not been decided by any Court

■ The purpose of the 1938 amendment of Sec. 59, sub. b, which for the first time required that the claims of the petitioning creditors must be "fixed as to liability" (and of the 1952 amend-

ment which changed this to "not contingent as to liability") was to lessen the chances that debtors would be involuntarily thrown into bankruptcy proceedings by creditors whose claims are neither fixed nor liquidated. In re Garrett Co., 134 F.2d 227, 228 (7th Cir. 1943); In re Lawton, 119 F.Supp. 724, 726 (S.D. W.Va.1954).

The legislative history of Sec. 59, sub. b, sheds some light upon its use of the term "fixed" (or "not contingent") as to liability. The 1952 amendment, which changed the phrase "fixed as to liability" to "not contingent as to liability" is explained in House Report, No. 2302, 82d Congress, 2d Sess., 1952, as follows:

"The use in this section of the word 'fixed' before 'as to liability' has developed some confusion, particularly when read with section 63a(1), which also speaks of a 'fixed liability.' It is not intended by 'fixed as to liability' in section 59b to restrict it to the claims provable under section 63a(1). Therefore, to avoid this confusion and for the sake of clarity, the amendment changes 'fixed' to 'not contingent'". 2 U.S.Code Cong. & Adm.News, p. 1968 (1952).

■■ It thus appears that the words "fixed" (or "not contingent") as to liability, as used in Sec. 59, sub. b, were certainly not intended to be restricted to the sense of "fixed liability, *as evidenced by a judgment or an instrument in writing*"—as that term is used in Sec. 63, sub. a(1). In other words, the term "not contingent as to liability", as used in Sec. 59, sub. b, is different from and broader than claims based on instruments in writing or judgments. It follows that Sec. 59, sub. b contemplates that creditors, whose claims are not based on instruments in writing or upon judgments, may petition in involuntary bankruptcy, e. g., creditors whose claims are based upon unwritten agreements or other transactions not yet reduced to judgment—provided only that the claims be not "contingent as to liability" in some other sense of that term.

It has been held that an unadjudicated claim based upon illegal drawing of

drafts and conversion of the proceeds thereof in a fixed amount was sufficiently fixed as to liability and liquidated as to amount. In re Beechwood, 36 F.Supp. 140 (D.N.J.1940).

On the other hand, it has been held that other claims, e. g., an unadjudicated claim of a discharged accountant for the value of services rendered, In re Garrett, supra; an unadjudicated claim for conversion of grain, In re Silver, 109 F. Supp. 200 (E.D.Ill.1952), aff'd 204 F.2d 259 (7th Cir. 1953); an unadjudicated general claim of fraud, In re Lawton, supra, are insufficient to qualify petitioning creditors. See also, In re Central Illinois, 133 F.2d 657 (7th Cir. 1943).

However, In re Mann, 117 F.Supp. 511 (D.C.Md.1952), held notes by warehouse receipts to be sufficient; In re Hayes, 127 F.Supp. 514 (D.C.Alaska, 1955), held a claim for wages partially secured by statutory lien, sufficient.

Examination of all these authorities clearly indicates that the theory on which claims have been held insufficient is that they were open, unliquidated claims (e. g., tort or quantum meruit claims requiring proof as to liability, reasonable value, damages, etc.), which by their very nature are not fixed unless and until juridical award to fix liability and amount. (Cf. In re Lawton, supra at 726).

All of the cases, however, state or assume that such claims, if reduced to judgment, would be sufficient.

In the present case, unlike In re Lawton, supra, the claims of the petitioning creditors, originally based upon such a general charge of fraud, have been reduced to a juridical award which has fixed both liability and amount.

■ The effect of the pending appeal does not affect this determination of liability and amount. Under Washington law, applicable to the judgment here, and according to the majority rule, an appeal from a judgment does not suspend the effect of the judgment as res adjudicata between the parties; Spokane v. Spokane County, 75 Wash. 72, 81–84, 134 P. 629

(1913); Riblet v. Ideal Cement Co., 57 Wash.2d 619, 358 P.2d 975 (1961); See, Annotation, 9 ALR 2d 984–1018.

It has also been held that (for the purposes of "provability" under Sec. 63 of the Bankruptcy Act), a judgment is "absolutely owing" when rendered and entered, irrespective of a pending appeal, See, 3 Collier on Bankruptcy, 1829, Sec. 63.10 (14th Ed. 1961), and irrespective of a state statute or rule to the contrary, Moore v. Douglas, 230 F. 399 (9th Cir. 1916); In re De Bock, 14 F.2d 675 (N.D.Calif.1925).

The question here is whether a supersedeas bond on the appeal renders the judgment any less absolute, i. e., renders it "contingent as to liability" within the meaning of Sec. 59, sub. b.

■ Under Washington law, and according to the weight of authority, a supersedeas on appeal does not cancel any right already obtained by the judgment creditor. It merely preserves the status quo pending appeal by operating against the enforcement of the judgment —not against the judgment itself. Lowe v. N. B. Clark & Co., 150 Wash. 267, 272 P. 955, 275 P. 674 (1928); Accord, Gumberts v. East Oak Street Hotel, 404 Ill. 386, 88 N.E.2d 883 (1949); See, 2 Freeman on Judgments, Sec. 722 (5th Ed. 1925).

Petitioners argue that the operation of supersedeas against *enforcement* of the judgment pending appeal renders it contingent as to liability within the meaning of Sec. 59, sub. b.

We are of the view, however, that the effectiveness of a supersedeas arrangement to postpone *enforcement* of the judgment by execution pending appeal does not render the judgment contingent as to liability within the meaning of Sec. 59, sub. b—at least in those states whose law makes judgments final adjudications between the parties notwithstanding the pendency of an appeal.

When an otherwise general, contingent, unliquidated claim has been reduced to a judgment establishing liability in a fixed amount, as in the present case,

the judgment, even if superseded pending an appeal, is no more, and in our view *less* contingent as to liability, within the meaning of the statute, than would be for example, an asserted claim for money, goods or services based upon some express contract for a fixed amount—a note, book account, account stated—*but not yet reduced to judgment.*

That a creditor with a claim of this latter type would be qualified to petition under Sec. 59, sub. b is indicated by the authorities: In re Hayes, supra; In re Mann, supra; In re Lawton, supra; In re Beechwood, supra.

Yet, the same argument could be made concerning such claims as petitioners here make concerning the judgment claim here in question, i. e., that such claims, not having been reduced to judgment, remain unfixed, contingent as to liability because, if successfully contested by various possible defenses, they may never have to be paid—just as, according to petitioners here, the judgment in question may never have to be paid *if* reversed on appeal.

Such an argument, if accepted and carried to its logical conclusion, would require a construction of Sec. 59, sub. b as limiting petitioning creditors only to such as have disposed of all possible defenses as to liability and amount by reducing their claims to judgment and, if we accept the further contention of petitioners here as to the effect of supersedeas on appeal, as *limiting them only* to creditors with judgments finally disposed of on appeal. Such a construction of Sec. 59, sub. b would go unreasonably beyond the purpose of the section and would raise a question concerning the soundness of decisions recognizing that claims arising from contracts, notes, book accounts, accounts stated, etc., are sufficient—even though still subject to contest and court adjudication.

We are satisfied, therefore, that the claims in question, as reduced to judgment, fixing liability and amount between the parties, is sufficient to qualify the petitioning creditors—notwithstanding the possible occurrence of a condition *subsequent*, i. e., reversal on appeal, may ultimately determine nonliability in whole or in part.

(3) WHETHER THE REFEREE ERRED IN EXCLUDING THREE CREDITORS UPON THE GROUNDS SET FORTH IN SEC. 59, sub. e(4) and (5).

Petitioners contend that the joint petition in involuntary bankruptcy by *two* petitioning creditors is insufficient because Bankruptcy Act, Sec. 59, sub. b requires three or more petitioning creditors unless all the creditors of the alleged bankrupt are less than twelve in number and petitioners further contend that in this case the Referee erred in finding that the creditors are less than twelve in number, i. e., ten, instead of thirteen as contended by petitioners.

In furtherance of this contention, petitioners argue that the Referee erred in excluding three creditors, Chaffee Department Store, Troy Ramsey, a gardener and City of Everett Water Department, under the provisions of Bankruptcy Act, Sec. 59, sub. e(4) and (5).

*Re Chaffee-Troy Ramsey:*

Bankruptcy Act, Sec. 59, sub. e(5), (11 U.S.C. § 95, sub. e(5), provides that in computing the number of creditors of a bankrupt for the purpose of determining how many creditors must join in the petition, there shall not be counted "creditors who have received preferences, liens, or transfers void or voidable" under the Act.

A preference is defined in Sec. 60, sub. a(1) as a transfer of any of the property of a debtor for or on account of an antecedent debt made or suffered by the debtor while insolvent and within four months before the filing of a bankruptcy petition, the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class.

Sec. 60, sub. b provides that any such preference may be avoided by the trustee if the creditor receiving it has at the

time reasonable cause to believe that the debtor is insolvent.

The Referee has found herein (Finding 30(12)(13) that the creditors, Chaffee's Apparel for Women and Troy Ramsey, a gardener, are excluded from computation as creditors for having received preferences at a time when each of them had reasonable cause to believe that the alleged bankrupts, Fletcher and Walton, were insolvent.

■■■ The issue of reasonable cause to believe insolvency is one of fact and, under General Order 47, this Court must accept the Referee's Finding thereon "unless clearly erroneous." See, 3 Collier on Bankruptcy, Par. 60.54, p. 1002, n. 3 (14th Ed. 1961).

■■■ We are of the view that the evidence is in support of the Referee's finding. The admitted prior knowledge of both creditors that the alleged bankrupts, Fletcher and Walton, had been found liable by the Snohomish County Superior Court in a pending law suit for an amount in excess of $3,800,000 is such as to preclude any holding that the finding is clearly erroneous.

■■■ Although reasonable cause to believe insolvency implies more than mere suspicion, it does not require actual belief of insolvency and may be inferred from such notice concerning the affairs of a debtor as would lead a prudent business person to believe the debtor insolvent. 3 Collier, supra; C. A. Swanson & Sons v. Wylie, 237 F.2d 16 (9th Cir. 1956); Margolis v. Gem Facters Corp., 201 F.2d 803 (2d Cir. 1953); Kelley v. National Surety Corp., 187 F. Supp. 329 (S.D.W.Va.1960).

We are of the opinion, therefore, that the Referee did not err in excluding these two creditors.

*Re Everett Water Co.:*

Section 59, sub. c(4), 11 U.S.C. § 95, sub. c(4) provides that in computing the number of creditors of a bankrupt for the purpose of determining how many creditors must join in the petition, secured creditors whose claims are fully secured shall not be counted.

■■ A "secured creditor" is defined by Bankruptcy Act, Sec. 1(28), 11 U.S.C. § 1(28) as one who has security for his debt upon the property of the bankrupt of a nature to be assignable under the Act.

The effect of this definition is that a creditor to be considered secured, must have a lien upon the property of the bankrupt. 1 Collier, supra, Par. 1.28.

There may be some doubt whether the so-called statutory lien given to the City of Everett under RCW 35.21.290 and RCW 35.21.300 to cut off water service to premises until delinquent and unpaid charges are paid is security for its debt within the meaning of Bankruptcy Act, Sec. 1(28).

In Metropolitan Life v. Hansen, 179 Wash. 537, 38 P.2d 387 (1934), the Court stated that the city is not given any lien at all in the technical or usual sense of that term because the property served by the city is not liable for the charge, nor is the property to be regarded as security for the payment of the city's claim, even though the city's right may be exercised against subsequent owners, mortgagees and tenants of the premises. See also, Moran v. City of Seattle, 179 Wash. 555, 38 P.2d 391 (1934).

The question is essentially one of law but it need not be determined here because, even if the City of Everett be included as a creditor, the number of creditors would still be less than 12 in our view of the case.

(4) DID THE REFEREE ERR IN FAILING TO COUNT CERTAIN CREDITORS TWICE?

The Referee found (Finding 31A) that among the firm creditors of Walton Plywood, the limited partnership were (1) Washington Plywood Co., (2) Larson, Nolan and Ness, (3) Public Utility District No. 1, (4) West Coast Telephone Co.

Petitioners contend that the Referee erred in failing to find that each of these four creditors were *also* individual creditors of Walton and Fletcher, the general partners of Walton Plywood, and in fail-

ing to *count them twice* in determining the total number of creditors of each of the general partners, i. e., counted once as creditors of the firm and counted again as creditors of the individual partners.

Petitioners point out that if this were done, then the creditors of Walton would be *fifteen* (counting also City of Everett Water Department and Chaffee Department Store) and the creditors of Fletcher would be *thirteen* (counting also Troy Ramsey and City of Everett Water Department) and that, therefore, three or more *petitioning* creditors would be required.

Petitioners' theory is that such double counting of creditors who have claims against both the firm and the individual partners, is suggested by the fact that such claims are regarded as separate for many purposes of bankruptcy administration, e. g., appointment of trustee (Sec. 5(c), separate accounts (Sec. 5(e), apportioning of expenses (Sec. 5(f) and distribution rights (Sec. 5(g).

This argument, raising a point which has not been passed upon by any Court, is interesting and well presented. However, we are of the view that even if sound, the result could not possibly aid petitioners in this case, because, if the theory of double counting is applicable for the counting of creditors for the purpose of determining how many debtors *must join in the petition*, it would in our opinion also be applicable to determine the number of creditors *actually petitioning*.

Sec. 59 uses the term "creditors" and number of "creditors," throughout. It does not use the term number of "claims" —only "creditors"—wherever a number of creditors is referred to. If the term "creditor" must be considered according to the nature of his claims for one purpose of the section, the term "creditor" should be similarly considered for other purposes of the section.

If this be correct, application of petitioners' theory would lead necessarily to the conclusion that there *are in fact*, not two, but four petitioning creditors in the present case as to the bankrupt, Walton and four as to the bankrupt, Fletcher, because the petitioning creditor, Washington Plywood, and the petitioning creditor Larson-Nolan-Ness, would each be counted twice as *petitioning creditors*. Petitioners concede that these two petitioning creditors each have claims against the individual bankrupt partners *and* against the partnership itself. (See Petitioners' Brief, pp. 23–24).

Therefore, without intending to suggest that petitioners' theory of double counting is valid, we merely refrain from passing upon the point one way or the other for the reason above mentioned.

For the foregoing reasons the Order, Findings and Conclusions of the Referee are affirmed.