In the Matter of Alva Ray Denham,
Alleged Bankrupt.

Alva Ray DENHAM, Appellant,

v.

**SHELLMAN GRAIN ELEVATOR, INC.,**
Appellee.

No. 71–1013
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

July 2, 1971.

* [1] Rule 18, 5th Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5 Cir., 1970, 431 F.2d 409, Part I.

H. P. Burt, Donald D. Rentz, Burt & Burt, Albany, Ga., for appellant.

Jesse G. Bowles, Cuthbert, Ga., James M. Collier, Dawson, Ga., S. B. Lippitt, Jr., Perry, Walters, Langstaff, Lippitt & Campbell, Albany, Ga., for appellee.

Before THORNBERRY, MORGAN and CLARK, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge:

This appeal is before us on two principal issues: (1) Does the involuntary petition filed here meet the requirements of Section 59(b) of the Bankruptcy Act as to number of petitioning creditors; and (2) Does the claim of the principal creditor meet the requirements of Section 59(b), in that it must not be contingent as to liability?

The alleged bankrupt, the appellant here, filed an answer to the involuntary petition denying, among other things, that he had creditors less than twelve (12) in number. He alleged in his answer that he had in fact eighteen (18) creditors and moved to dismiss the involuntary petition on the ground that there were not sufficient petitioning creditors (three being needed if number of bona fide creditors exceed twelve), and for the further reason that the judgment of the petitioning creditor here, Shellman Grain Elevator, Inc., was not final.

The Referee in Bankruptcy denied the motion to dismiss, and the District Judge affirmed the Referee's denial of the motion. This Court agrees with the Court below that the Referee in Bankruptcy was eminently correct in his decision for the reasons hereinafter stated.

The record reveals the following facts:

The petitioning creditor obtained a judgment against the alleged bankrupt and one T. Harrison Crump in Randolph Superior Court on May 16, 1970, in the principal amount of $37,343.20. On February 4, 1970, the alleged bankrupt recorded a warranty deed, dated November 4, 1968, which he prepared, and in which he transferred to his wife all of his assets, with the exception of three (3) automobiles. The alleged bankrupt had the reputation of paying his business and personal bills on the tenth of the month following the month for which the bill was incurred; and of the eighteen (18) creditors listed by the alleged bankrupt in his answer, all but two (2) were debts alleged to have occurred in May, 1970 (the bill of Quality Court Motel is dated June 1, 1970, and the bill of Forshee Gin and Warehouse, Inc. is dated February 12, 1970). The eighteen (18) creditors listed by the alleged bankrupt in his answer hold a total indebtedness of $467.13—seven (7) of these creditors being for less than $10.00 each, six (6) are less than $25.00, and only the claim of Forshee Gin and Warehouse, Inc. in the amount of $121.-04 exceeds $100.00. Of the eighteen (18) creditors listed in the answer of the alleged bankrupt, all but one were creditors holding small insignificant debts which consisted of consumer accounts that were customarily paid monthly by the alleged bankrupt—the only exception being the debt to Forshee Gin and Warehouse, Inc., in the amount of $121.04. Subsequent to the filing of the involuntary petition in bankruptcy, the alleged bankrupt departed from his custom of paying his currently due accounts every thirty (30) days, leaving the petitioning creditor as the only creditor holding a substantial claim of the kind that is not customarily paid monthly.

As far as we can ascertain, this question construing Section 59(b) of the Bankruptcy Act is before us for the first time.

The cases of In re Burg, 245 F. 173, 174, N.D.Tex. (1917); In re Branche, 275 F. 555, N.D.N.Y. (1921); Security Bank & Trust Co. v. Tarlton, 294 F. 698, W.D.Tenn. (1923); and In re Blount, 142 F. 263, E.D.Ark. (1906) are in point with the question sub judice. These cases reject the contention that small current debts, contracted to be paid monthly and on demand, such as claims for rent, groceries, drugs, etc.,

can be resorted to by an insolvent for the purpose of increasing the number of his creditors to twelve (12) or more in order to defeat an involuntary petition by a large creditor. It may be well to observe that such creditors are practically secured, as their bills have to be paid month to month before further necessities can be obtained. As the Court said in In re Burg, supra: "The bankruptcy law is never invoked by any such small creditors, who themselves have adequate remedy for the collection of their accounts by cutting off further supplies".

We note that the United States District Court for the District of Colorado in the case of In re Colorado Lime Company, 298 F.Supp. 1053 (1969), has observed that in the cases cited above *(Burg, Blount, Branche & Tarlton)* an artifice or scheme was involved which resulted in an attempt to avoid the letter and spirit of the involuntary feature of the Bankruptcy Act. In passing, we note that the Referee in Bankruptcy found such a scheme to exist here, and we believe that the evidence supports this finding. The Court in the *Colorado Lime* case goes further:

"A debtor conveys all his property, with the avowed intention of preferring all of his creditors except one or two, and then he avoids involuntary bankruptcy by creating eleven or more creditors by purchasing small items and having them charged on a monthly account. By paying these monthly accounts promptly each month, after additional purchases have been made and charged, the debtor would always have a number of creditors ready to be used to defeat an involuntary bankruptcy petition. It is very unlikely that creditors of this kind, who feel secure in having their bills paid promptly would wish to incur the risk of losing a good customer in order to join a bona fide creditor in instituting proceedings in bankruptcy. The idea would thus appear to be that the small creditor is not genuine or bona fide. It does not appear in our case, however, that any such scheme is being

practiced or that the creditors are not true creditors."

It is our belief that whether or not a scheme was involved, it was not the intent of Congress to allow recurring bills such as utility bills and the like to create a situation which, by refusal of these small creditors to join in an involuntary petition, can defeat the use of the Bankruptcy Act by a large creditor, as in the subject case. This would be grossly inequitable, and for this reason this Court refuses to follow the *Colorado Lime* decision.

Section 56(c) (11 U.S.C. Sec. 92) of the Bankruptcy Act indicates clearly the intention of Congress concerning small claims and how they should be treated. This section states:

"Claims of $50 or less shall not be counted in computing the number of creditors voting or present at creditors' meetings, but shall be counted in computing the amount."

This section of the Act is only mentioned to show by analogy that a majority vote in number cannot be arrived at by the use of claims under $50.00.

Concerning the second point raised by the appellant; i. e., that the claim of Shellman Grain Elevator, Inc., does not meet the requirements of Sec. 59(b) of the Bankruptcy Act, which provides that a claim of a petitioning creditor must not be contingent as to liability, this Court finds no merit in appellant's position. It seems that on May 13, 1970 the petitioning creditor here obtained a verdict in the Superior Court for Randolph County, Georgia, against the alleged bankrupt and one T. Harrison Crump in the principal amount of $37,343.20 for fraudulent conversion of the petitioning creditor's property. Three days later on May 16, 1970 a judgment was entered on this verdict. On June 10, 1970, the alleged bankrupt filed his motion for a new trial from the verdict and judgment, which motion was dismissed and overruled on July 25, 1970. Later, the Georgia Court of Appeals ruled against the contentions of the appellant, and the

appellant has only a motion for re-hearing pending.

The legislative history of Sec. 59(b) sheds some light upon its use of the term "fixed" (or "not contingent") as to liability. The 1952 amendment, which changed the phrase "fixed as to liability" to "not contingent as to liability" is explained in House Report, No. 2320, 82d Congress 2d Sess., 1952, as follows:

"The use in this section of the word 'fixed' before 'as to liability' has developed some confusion, particularly when read with section 63a(1), which also speaks of a 'fixed liability.' It is not intended by 'fixed as to liability' in section 59(b) to restrict it to the claims provable under section 63a(1). Therefore, to avoid this confusion and for the sake of clarity, the amendment changes 'fixed' to 'not contingent' ". 2 U.S.Code Cong. & Admin.News, p. 1968 (1952).

 It thus appears that the words "fixed (or "not contingent") as to liability," as used in Sec. 59(b), were certainly not intended to be restricted to the sense of "fixed liability, as evidenced by a judgment or an instrument in writing"—as that term is used in Sec. 63a(1). In other words, the term "not contingent as to liability", as used in Sec. 59(b), is different from and broader than claims based on instruments in writing or judgments. It follows that Sec. 59(b) contemplates that creditors, whose claims are not based on instruments in writing or upon judgments, may petition in involuntary bankruptcy, e. g., creditors whose claims are based upon unwritten agreements or other transactions not yet reduced to judgment—provided only that the claims be "not contingent as to liability" in some other sense of that term.

Examination of all the authorities clearly indicates that the theory on which claims have been held insufficient is that they were open, unliquidated claims (e. g., tort or quantum meruit claims requiring proof as to liability, reasonable value, damages, etc.), which by their very nature are not fixed unless and until juridical award to fix liability and amount. In re Lawton, 119 F.Supp. 724, 726 (1954).

All of the cases, however, state or assume that such claims, *if reduced to judgment*, would be sufficient.

In the present case, unlike In re Lawton, supra, the claim of the petitioning creditor, originally based upon a general charge of fraud, has been reduced to a juridical award, which has fixed both liability and amount. In re Walton Plywood, 227 F.Supp. 319, W.D.Wash. (1964).

 The effect of the pending appeal does not affect this determination of liability and amount. Under Georgia law, applicable to the judgment here, and according to the majority rule, an appeal from a judgment does not suspend the effect of the judgment as res adjudicata between the parties. Pope v. Shipp, 38 Ga.App. 483, 144 S.E. 345 (1928). Consequently, the Court sees no merit in the appellant's second contention.

Appellant raises for the first time in his brief to this Court his contention that he is a farmer within the meaning of the provisions of the Bankruptcy Act. Suffice it to say that under Section 1(17) of the Bankruptcy Act defining a "farmer", the alleged bankrupt obviously did not derive his principal income from farming, and hence, this contention is held to be without merit.

Therefore, for the reasons stated above, the decision of the United States District Court for the Middle District of Georgia is

Affirmed.