**In re Wallace DILL, Debtor.**

**BAP Nos. NV–81–1124HVE, NV–81–1200HVE.**

**Bankruptcy No. BK–LV–389.**

United States Bankruptcy Appellate Panels for the Ninth Circuit.

Argued Nov. 18, 1982.

Decided June 13, 1983.

R. Paul Sorenson, Sorenson & Doyle, Las Vegas, Nev., for appellant.

James H. Walton, Nitz, Schofield & Nitz, Las Vegas, Nev., for appellee.

Before HUGHES, VOLINN and EL-LIOTT, Bankruptcy Judges.

## OPINION

HUGHES, Bankruptcy Judge:

Petitioning creditors have appealed two orders of the bankruptcy court, one dismissing their petition for an involuntary order for relief under Chapter 7 of the Bankruptcy Code and the other awarding attorney's fees to the alleged debtor. We reverse the order of dismissal; inasmuch as the award of attorneys fees is dependent on the order of dismissal, 11 U.S.C. § 303(i)(1)(B), it too must be vacated.

### I

Appellants are three of eight individuals who alleged that they purchased interests in a limited partnership from appellee Dill, the alleged debtor, for amounts ranging from $10,000 to $72,400 each. They allege that Dill, in return for their investment, agreed to convey 900 acres known as the D-Bar Ranch to the limited partnership. While the deed accomplishing that transfer was executed by Dill and his wife, it was never recorded and the property eventually passed to other parties.

In 1979, some of the eight limited partners sued Dill in a Nevada court for fraud and conversion, which action is still pending. Appellants filed an involuntary peti-

tion in bankruptcy on May 5, 1980, leading to the order appealed. The petition alleged, in part, that each petitioner "was induced by debtor to pay" a specific amount of money "as a purported subscription to a limited partnership ... and in return for same [Dill] agreed to place into said partnership real estate and other property of value of $700,000 and that said debtor fraudulently did not place any assets into said partnership and has converted same fully to his own use." It was also alleged that Dill was "generally not paying his debts as they became due." Two such debts, one to the Federal Land Bank of Sacramento and the other to Zion First National Bank, were specified.

Dill moved for summary judgment in February 1981, contending that petitioners were not entitled to relief because their claims were "contingent as to liability", which would disqualify them as petitioners under 11 U.S.C. § 303(b)(1), and because petitioners could not show that Dill was generally not paying his debts as they became due, a requirement of 11 U.S.C. § 303(h)(1). Dill's uncontroverted affidavits in support of this motion stated that the two creditor banks had been paid in full prior to March 5, 1980.

The motion for summary judgment was denied, *In re Dill,* 13 B.R. 9 (Bkrtcy.D.Nev. 1981), because the court found that a material issue of fact existed as to whether Dill had admitted liability to the petitioners, thereby overcoming any contingency as to liability. This ruling assumed that tort claims based on fraud and conversion were "contingent as to liability" for purposes of 11 U.S.C. § 303(b)(1).

At trial, the court declined to hear evidence on any issue except the admission of liability. Finding no admission of liability by Dill, and ruling that petitioners had failed to show that the debtor was not generally paying his debts as they became due, the court dismissed the petition with prejudice pursuant to B.R. 741, Fed.R.Civ. Pro. 41(b).

## II

An involuntary case may be commenced by "... a holder of a claim against [the alleged debtor] that is not contingent as to liability..." 11 U.S.C. § 303(b)(1). The words we construe are *contingent* and *claim.*

### A

Although *claim* is defined by the Code, 11 U.S.C. 101(4)(A), neither *contingent* nor *contingent claim* is defined. Black's Law Dictionary defines a contingent claim as

[o]ne which has not accrued and which is dependent on some future event that may never happen.

Contingency is one of many characteristics of a claim, as defined in 11 U.S.C. § 101(4)(A). Contingency is thus distinguishable from other defined characteristics e.g. liquidated, matured, unadjudicated, disputed, etc. Accord, *In re All Media Properties, Inc.,* 5 B.R. 126 (Bkrtcy.S.D.Tex.1980) aff'd 646 F.2d 193 (5th Cir.1981); *In re Covey,* 650 F.2d 877 (7th Cir.1981). See *In re Sylvester,* 19 B.R. 671 (Bkrtcy.App.R. 9th Cir.1982).

We conclude that the phrase "claims not contingent as to liability" in § 303(b)(1) incorporates the ordinary meaning of a contingent claim, namely a claim that has not accrued and which is dependent upon a future event.

### B

A contingent claim under the former Act was essentially the same thing, i.e., liability depended upon the occurrence of a future event.

The precurser of § 303(b)(1) was Section 59b of the Act, which underwent a number of modifications over the years. Prior to 1938, it provided that any holder of a provable claim (of a specific amount) could commence an involuntary case. In 1938, the section limited eligibility to "creditors who have provable claims fixed as to liability and liquidated as to amount." In 1952, the phrase "fixed as to liability" was changed to "not contingent as to liability" to dispel

any notion that involuntary petitioners had to hold claims evidenced by a judgment or instrument in writing. H.R. No. 2320, 82d Cong.2d Sess. (1952) 8, U.S.Code Cong. & Admin.News 1952, p. 1960. Finally, in 1962, the requirement that the claim must be "liquidated as to amount" was deleted.

The reason for continuing to preclude creditors holding contingent claims from prosecuting involuntary petitions was explained in the 1961 House Report. Such creditors

> have been properly barred ..., for the contingency of bankrupt's obligation may be such as to render the claim incapable of proof. It may be dependent upon an event so fortuitous as to make it uncertain that liability will ever attach...

H.R. No. 1208, 87th Cong., 1st Sess. (1961) 5, 6.

From the foregoing, we conclude that *contingent* was not the same as liquidated, fixed, or provable under the Act, and that the Congress intended that *contingent* be accorded its ordinary meaning, i.e., dependent upon a future event.

We have found only one case decided under the Act that specifically addressed the meaning of *contingent* as used in Section 59b. *In re Trimble Co.,* 339 F.2d 838, 844 (3rd Cir.1964). It held that a claim on a note was not contingent because "[n]o additional act or event, fortuitous or otherwise, need have occurred here before liability ... attached." This case clearly used *contingent* in its ordinary sense.

### C

The cases decided under the Code also give *contingent* as found in § 303(b)(1) its ordinary meaning. In *In re All Media, supra,* at 133, the court said that "... claims are contingent as to liability if the debt is one which the debtor will be called upon to pay only upon the occurrence or happening of an extrinsic event..." Accord, *In re Covey, supra.* Stated another way, where all the facts giving rise to liability are in existence at the time of the filing of the petition, and no future occurrence is required in order to establish debtor's liabili-

ty, the claim is not contingent as to liability. *In re New Mexico Properties, Inc.,* 18 B.R. 936, 8 B.C.D. 1296 (Bkrtcy.D.N.M.1982).

We thus return to the beginning: a claim is contingent as to liability when it has not accrued and is dependent on some future event that may never happen.

### III

■ A tort claim ordinarily is not contingent as to liability; the events that give rise to the tort claim usually have occurred and liability is not dependent on some future event that may never happen. It is immaterial that the tort claim is not adjudicated or liquidated, or that the claim is disputed, or indeed that it has any of the many other characteristics of claims under the Code. 11 U.S.C. § 101(4)(A). These independent characteristics do not affect contingency and they do not affect a petitioning creditor's qualifications under the Code.

### A

Under the Act, most tort claimants lacked standing to commence involuntary bankruptcy cases because of the requirement in Section 59b that their claims be provable. With the exception of claims based upon actions for negligence pending at the time the case was commenced, former Section 63(a)(7), unliquidated tort claims were not provable under Section 63a. *Schall v. Camors,* 251 U.S. 239, 40 S.Ct. 135, 64 L.Ed. 247 (1920). ("Thus tort claimants, aside from those specified in the the the Act, and other creditors with nonprovable claims may not qualify as petitioners." 3 Collier on Bankruptcy, 14th ed. p. 597).

Congress did not retain the concept of provability in the current Bankruptcy Code, however, so that the reason most tort claimants were excluded from initiating involuntary petitions no longer exists.

### B

The various Act cases cited to us by appellee do not support the proposition that tort claims for conversion are contingent under § 303(b)(1).

**550**

There is dicta in three cases to the effect that an unadjudicated tort claim is contingent as to liability. Each decision was based on the requirement in section 59b, as it then read, that a claim be "liquidated as to amount and not contingent as to liability." Each decision overlooked, however, the threshold requirement of section 59b that the claim be provable. The case of *In re Lawton,* 119 F.Supp. 724 (S.D.W.Va.1954) held that an unadjudicated fraud claim—which was clearly unliquidated and thus non-provable—did not satisfy section 59b. Likewise, *Matter of State Realty Co. of Boston,* 131 F.Supp. 554, 556 (D.Mass.1955) held that a vague claim, possibly sounding in tort, could not "be said either to be not contingent or to be liquidated as to amount." (With minor exceptions, a vague tort claim was not provable).

Although the court was asked to decide whether a tort claim is contingent as to liability in *Denham v. Shellman Grain Elevator, Inc.,* 444 F.2d 1376 (5th Cir.1971), it held instead that the claim had "been reduced to juridical award, which ... fixed both liability and amount." *Id.,* at 1380. As a judgment, the tort claim was provable.

In none of these cases did the court attempt a positive definition of *contingent* as was done in *In re Trimble Co.,* supra.

In *In re Garrett & Co.,* 134 F.2d 227 (7th Cir.1943), the court dismissed an involuntary petition brought by the holder of an unadjudicated claim on a past due account for services rendered, because the claim was not *fixed as to liability nor liquidated as to amount.*

Finally, appellee cites two cases holding that a petitioner's claim should not be considered where the determination of liability would unduly delay the decision on the merits. *In re Coldiron and Peeples Oil Co.,* 356 F.2d 266 (9th Cir.1966), *Matter of East Coast Mechanical Contractors Inc.,* 2 B.C.D. 1309 (Bkrtcy.D.Conn.1976). These cases are not relevant under the Bankruptcy Code. The undue delay in these cases referred to a specific exclusion of certain unliquidated claims in former Section 59b. Under the Code, a claim need not be liquidated or estimated to support an involuntary petition. 11 U.S.C. § 303(b)(1).

Thus, the cases that disqualified tort claimants as involuntary case petitioners under the former Act rested on the ground that the claims were either unliquidated or not provable. Provability and liquidation no longer being relevant, neither are the cases dealing with such issues relevant.

We conclude that a creditor holding an unadjudicated and disputed tort claim is not barred as a petitioner by 11 U.S.C. § 303(b)(1). The only limiting factor under that section is contingency, and a tort claim is not contingent.

IV

The order appealed was based on the erroneous assumption that unadjudicated tort claims are contingent as to liability unless liability has been admitted. The court also held that the petitioning creditors had not presented a triable issue on whether the alleged debtor is not generally paying his debts as they become due. 11 U.S.C. § 303(h). This was based, in part, on the petitioners' allegations that payments were not being made to two specified creditors and the uncontroverted affidavit that those creditors had been paid in full before the involuntary petition was filed.

The record does not disclose what other debts, if any, Dill may have had although the petitioning creditors unsuccessfully sought to discover such facts. (The debtor apparently failed to comply with Interim Bankruptcy Rule 1008 which required him to "appear in court at the trial ... with his books, papers and accounts, and submit to an examination as to all matters bearing on the allegation"). It does show that Dill had not paid anything to petitioners, thus raising the question of whether Dill's failure to pay these disputed claims satisfies 11 U.S.C. § 303(h)(1).

We believe that the Seventh Circuit set forth the appropriate standards when it held that the mere fact that a debt is disputed is not a reason to exclude it from this determination. *In re Covey,* supra, at 881.

Thus, if the dispute is merely of the amount, or if the dispute is of the entire claim and will entail substantial litigation, the debt should be included in the § 303(h)(1) calculation, and the dispute dealt with later. *Id.,* at 884.

If it appears that the dispute will not entail substantial litigation, the alleged debtor's interest in avoiding the involuntary petition is balanced against the creditor's interest in a speedy decision. Only if the debtor's interest outweighs the creditor's should the dispute be resolved before it is counted. If not, the disputed debts should be considered without resolution of the dispute until after the order for relief.

Thus, the disputed claims should be counted in determining whether Dill was generally not paying his debts as they became due under every circumstance except one. If the court finds that resolution of the dispute will not entail substantial litigation and that Dill's interest in avoiding the involuntary order for relief outweighs the petitioning creditors' interest in a speedy decision on the order for relief, the court should try the tort actions before entering an order for relief.

In other words, debts should not be excluded from the section 303(h)(1) calculation—whether or not they are disputed—unless the court adjudicates liability and finds none.

Reversed and remanded for further proceedings consistent with this opinion.