In re LONGHORN 1979–II DRILLING PROGRAM, an Oklahoma limited partnership, Debtor.

Bankruptcy No. Bk–83–01901–A.

United States Bankruptcy Court,
W.D. Oklahoma.

Sept. 13, 1983.

---

**36.** A purchase money security interest defeats even prior liens. KRS 355.9–312.

John C. McMurry, Oklahoma City, Okl.,
Ernest W. Lohf of Lohf & Barnhill, and H.
Thomas Coghill of Coghill & Goodspeed,
Denver, Colo., for petitioners.

Myron M. Sheinfeld and Nancy E. Friedman of Sheinfeld, Maley & Kay, Houston, Tex., Murray E. Abowitz and Noma D. Gurich of Abowitz & Welch, Oklahoma City, Okl., for debtor.

## DECISION AND ORDER

RICHARD L. BOHANON, Bankruptcy Judge.

The partnership debtor has moved to dismiss this involuntary petition brought by petitioners who allege they are requisite holders of claims. The motion is filed pursuant to BR 1011(b) which incorporates Rule 12(b) F.R.Civ.P.

It appears from the petition that debtor is a limited partnership formed to drill for oil and gas and sold securities to raise funds for that purpose. Petitioners purchased partnership interests and have sued the partnership, general partners and other defendants in the District Court. *D & G Enterprises, et al. v. Longhorn Oil & Gas Company, et al.*, CIV–82–1415–W (D.W.D. Okla. filed Sept. 3, 1982). There are numerous parties plaintiff and defendant and the complaint is apparently one of many brought against Longhorn affiliated entities. The allegations raise issues of federal and state securities laws, fraud, partnership rights and duties, and negligence.[1]

The motion to dismiss the involuntary petition contends that the petitioners are not entitled, as a matter of law, to entry of an order for relief. The motion argues that the petitioners are not qualified to commence an involuntary case against the debtor-partnership for they do not fall within the requirements of § 303(b)(3) of the Bankruptcy Code which, allegedly, governs exclusively involuntary petitions against partnerships; and that they are not holders of a claim which is not contingent as to liability as required by § 303(b)(1).

The debtor makes a novel and skillful argument that an involuntary petition against a partnership may be brought only

under § 303(b)(3), to the exclusion of paragraphs (1), (2) and (4) of subsection (b) of section 303. Granted, since paragraph (3) commences by saying "if such person is a partnership- ..." it could be stretched to apply exclusively in partnership cases. Debtor buttresses its argument with reference to the Advisory Committee Note to BR 1004 which states "subdivision (b) implements § 303(b)(3) of the Code ..." Rule 1004 provides for service of an involuntary petition upon each general partner.

The debtor concedes that it finds no support for its contention in decisions, treatises or legislative history of the Bankruptcy Code.

To follow this argument would require a ruling that, in partnership cases, holders of claims could petition involuntarily only if relief has been ordered for all the general partners.[2] We believe this result would create an unintended aberration in bankruptcy law. Surely the Congress would not have taken such an abrupt departure from past practices without mention, and the knowledgeable writers in the area would have commented on it. To the contrary, Professor Kennedy states that "[q]ualified creditors or other holders of claims against a partnership may petition for relief in an involuntary petition under section 303(a) of title 11 ..." and does not mention any requirement of exclusivity in § 303(b)(3). Kennedy, *Partnerships and Partners Under the Bankruptcy Reform Act and the New (Proposed) Rules*, 27 St.Louis U.L.J. 507, 524, *and see* pp. 528–538 (1983). *See also* 2 *Collier on Bankruptcy*, ¶ 303.09 at 303–39 to 303–42 (15th ed. 1983).

Further, subsection (b) provides that an involuntary case may be commenced under paragraphs (1), (2), (3), "... *or* ..." (4).

■ We thus hold that § 303(b)(3) is not the exclusive provision for commencing an involuntary case and petitioners may file if otherwise qualified. This ground for the motion is thus denied.

---

1. This decision, of course, does not relate to the merits, or lack of merits, of the pending lawsuit.

2. In this case relief has previously been ordered for one of the two general partners.

■ The next inquiry is whether the petitioners hold claims "... not contingent as to liability ..." 11 USC § 303(b)(1). It appears from the petition that petitioners purchased partnership interests and have sued for rescission and damages. These are the only facts available for the determination under BR 1011(b) and Rule 12(b) F.R. Civ.P. In deciding a motion to dismiss, the complaint is construed in the light most favorable to the plaintiff and its allegations are taken as true. 5 C. Wright and A. Miller, *Federal Practice and Procedure,* § 1357, p. 594 (1969). To justify granting a motion to dismiss it must appear, as a matter of law, that under no state of facts well pleaded which the petitioners could prove to support their petition would they be entitled to relief. *O'Bryan v. Chandler,* 249 F.Supp. 51 (D.Okla.1964). These motions are disfavored and should not be granted unless it appears certain that the petitioners would not be entitled to an order for relief under any facts they could prove in support of the allegations. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Kersh v. General Council Of The Assemblies of God,* 535 F.Supp. 494 (D.N.D. Cal.1982).

■ An involuntary petition for bankruptcy is considered with all the liberality of the usual civil complaint. *Abramson v. Boedeker,* 379 F.2d 741 (5th Cir.1967), *cert. denied,* 389 U.S. 1006, 88 S.Ct. 563, 19 L.Ed.2d 602 (1967).

The determination, thus, leads us directly into a thicket which has entangled several courts since adoption of the Bankruptcy Code.

In this connection "claim" means:

"(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured."

11 U.S.C. § 101(4)

The legislative history clarifies that Congress intended a broad definition. It says that "... [t]he bill contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case. It permits the broadest possible relief in the bankruptcy court." H.R.Rep. No. 595, 95th Cong., 1st Sess. 309 *reprinted in* 1978 U.S. Code Cong. & Ad.News 6266.

The petitioners are, thus, entitled to commence the case if they have a right to payment or an appropriate equitable remedy which is not contingent as to liability. By Congressional definition the fact that the claim is "disputed" and not "reduced to judgment" is insignificant.

One court has said that "... claims are contingent as to liability if the debt is one which the debtor will be called upon to pay only upon the occurrence or happening of an extrinsic event which will trigger the liability of the debtor to the alleged creditor and if such triggering event or occurrence was one reasonably contemplated by the debtor and creditor at the time the event giving rise to the claim occurred." *In re All Media Properties, Inc.,* 5 B.R. 126, 133 (Bkrtcy.S.D.Tex.1980), *aff'd per curiam,* 646 F.2d 193 (5th Cir.1981).

Another says "[h]owever, merely setting up a dispute to a claim does not disable one as a creditor under § 303." *In re B.D. Intern. Discount Corp.,* 13 B.R. 635, 638 (Bkrtcy.S.D.N.Y.1981). In its affirming decision the Court of Appeals said that:

In order to qualify a claim as a basis for seeking involuntary bankruptcy, a claimant need not make out a case warranting summary judgment although in fact [petitioner] came close to this. It is sufficient to establish, as [petitioner] did here, that there are good grounds for the claim and that no defenses have been asserted in substantiable form. Whether less may suffice we need not decide.

. . . .

We realize that, by deciding both phases of this case upon the particular facts here presented we are not giving bankruptcy judges the guidance which they doubtless desire and it is our duty to provide if we properly can.

*In re B.D. Intern. Discount Corp.,* 701 F.2d 1071, 1077 (2d Cir.1983). (Footnotes omitted) *See also In re Covey,* 650 F.2d 877 (7th Cir.1981).

Petitioners rely heavily upon the statement in *In re Dill,* 30 B.R. 546, 550 (Bkrtcy. 9th Cir.1983) "... that a creditor holding an unadjudicated and disputed tort claim is not barred as a petitioner by 11 USC § 303(b)(1). The only limiting factor under that section is contingency, and a tort claim is not contingent." [3]

Each of these statements contemplates a claim being contingent as to liability when some future event *in the relationship of the parties* must occur before liability fixes or attaches. In this connection "liability" does not mean the same as judgment or remedy, but only a condition of being obligated to answer for a claim. Therefore, there is liability when all the elements required for a claim under § 104(a) are in existence and all the underlying events have accrued. So long as all the facts which give rise to the tort action have occurred the claim is accrued and there is no contingency as to liability in the bankruptcy sense.[4]

We think that the term "accrued" in the bankruptcy sense takes on the same meaning as with reference to a cause of action in ordinary litigation. For our purposes, therefore, "accrued" means becoming complete so that the aggrieved party can begin and prosecute his action. *New York Times Company v. Conner,* 291 F.2d 492 (5th Cir.1961); *see also* 1 Am.Jur.2d *Actions*

§ 88, at 617 (1962). The claim is accrued at the moment the plaintiff could have first maintained an action or, stated otherwise, when he would be entitled to institute a judicial proceeding for enforcement of his rights. *See Federal Reserve Bank v. Atlanta Trust Co.,* 91 F.2d 283 (11th Cir.1937), *cert. denied,* 302 U.S. 738, 58 S.Ct. 140, 82 L.Ed. 571 (1937). In tort actions a claim accrues on the date when the tort is committed, the date on which there arose wrongful invasion of personal or property rights, or when the person injured acquires a present right to sue. *Service Stages, Inc. v. Greyhound Corp.,* 170 F.Supp. 482 (D.N. D.Ga.1959), *aff'd,* 268 F.2d 739 (5th Cir. 1959). Thus, a tort claim accrues at the moment the course of events is first sufficiently ripe for suit. Lack of judgment does not affect the tort claim so as to make it contingent, but the judgment concerns only enforceability and payment of the claim. The contingency is whether the creditor will obtain a judgment, not whether he has a claim sufficient for an involuntary petition.

Liability, thus, does not presuppose a judgment. For example the Oklahoma Supreme Court has said:

"The words 'liable' and 'liability' have a number of different meanings that cannot be rigidly restricted to 'present actionability' so as to exclude the idea of uncertainty, futurity or contingency. Rather, when we refer to one as 'liable', we denote or describe '*the condition of being responsible for a possible or actual loss, penalty, evil, expense or burden.*'" (citations omitted) (emphasis added). *Chicago, Rock Island and Pacific Railroad Company v. Davila,* 489 P.2d 760, 764 (Okl.1971).

---

**3.** Notice of appeal to the 9th Circuit was filed July 5, 1983, in *In re Dill,* 30 B.R. 546 (Bkrtcy. 9th Cir.1983). Although our decision here refers to the *Dill* Appellate Panel decision it does not entirely rely on the *Dill* holding as our reasoning goes beyond statements supported by *Dill.*

**4.** Here the claims are based on facts which antedate the involuntary petition and are subject to a proceeding in another court which

involves alleged securities law violations and improper business dealings. In that action petitioners seek rescission, damages and other relief. Some of the various causes of action may sound in tort while others may not. For our purposes there is no reason to distinguish among these various causes of action by placing form over substance. *Cf. White v. Abrams,* 495 F.2d 724 (9th Cir.1974).

Liability in connection with the phrase "contingent as to liability" must be construed narrowly as a state of circumstances where one is bound in law to do, pay, or make good something which can be enforced by legal action. When all the events have occurred which allow a court to adjudicate a claim and determine whether or not payment should be made, there is no contingency concerning the claim itself. The contingency is applicable only to payment and is only a condition of payment. This logic applies impartially to actions which sound in tort as well as contractual obligations.[5]

Indeed, under the Bankruptcy Act of 1898 even with its strict provisions regarding "provability", some tort actions would not have been "contingent as to liability". *See 2 Remington On Bankruptcy §§ 826, 827, 817 (1940). Cf. In re Sabbatino & Company,* 150 F.2d 101 (2d Cir.1945). In light of the liberal definition of "claim" under the Code there is no reason to exclude a claim as "contingent as to liability" merely because it sounds in tort.

Had this debtor filed voluntarily, unquestionably these claims could be discharged, and petitioners could assert them in the proceeding even though litigation was pending and uncertain. Holding that creditors may not petition involuntarily until their claims have been brought to judgment would have unintended results. *Cf. Brown v. O'Keefe,* 300 U.S. 598, 605, 57 S.Ct. 543, 547, 81 L.Ed. 827 (1937).

■ The bare fact that the claim may subsequently be denied judgment by a tribunal does not make it contingent as to liability in the sense intended by Congress nor does it change the fact that the claim existed upon accrual of all the necessary events. *In re McNeil,* 13 B.R. 434 (D.C.E.D. Tenn.1981); *Crateo, Inc. v. Intermark, Inc.,* 536 F.2d 862 (9th Cir.1976), *cert. denied,* 429

U.S. 896, 97 S.Ct. 259, 50 L.Ed.2d 180 (1976); *see also Healy v. Commissioner of Int. Rev.,* 345 U.S. 278, 73 S.Ct. 671, 97 L.Ed. 1007 (1953); *Denham v. Shellman Grain Elevator, Inc.,* 444 F.2d 1376 (5th Cir.1971); *In re Walton Plywood,* 227 F.Supp. 319 (D.Wash.1964).

To further understand § 303(b)(1) we must review the Bankruptcy Act of 1898 and amendments to it. It is clear that several developments under the Act led to the language "not contingent as to liability" now found in § 303(b).[6]

Under the predecessor provision for commencing an involuntary case, section 59b, only a creditor with a "provable claim" could bring a petition. Bankruptcy Act of 1898, Pub.L. No. 171, 30 Stat. 544 (1898). In 1938 this section was amended to provide for commencement of cases by "creditors who have provable claims fixed as to liability and liquidated as to amount." Chandler Act, Pub.L. No. 696, 52 Stat. 840 (1938).

In 1952 the language, "fixed as to liability," was amended to read "not contingent as to liability." Pub.L. No. 456, 66 Stat. 420 (1952). The rationale for this change was to make it clear that involuntary petitioners were not required to hold "provable" claims evidenced by judgments in light of section 63a(1). See H.R.Rep. No. 2320, 82d Cong.2d Sess., *reprinted in* 1952 U.S.Code Cong. & Ad.News 1960, 1968. In 1962 Congress deleted from § 59b the phrase "liquidated as to amount." Pub.L. No. 87–681, 76 Stat. 570 (1962).

The history of the amendments refining the language of § 59b coupled with the broad definition of "claim" now contained in the Code, show that Congress no longer intends "contingent as to liability" to require a provable claim, liquidated claim, or a claim evidenced by judgment, as those terms were used in the past. *In re All*

---

5. We further note that the distinction between tort and contract actions in general has become blurred and under the set of facts here we find no need to make a distinction. *See also* P.S. Atiyah, RISE AND FALL OF FREEDOM OF CONTRACT (1979); G. Gilmore, THE DEATH OF CONTRACT (1974).

6. For a discussion of the legislative history surrounding the amendments to the Bankruptcy Act of 1898 see *In re Walton Plywood,* 227 F.Supp. 319 (D.Wash.1964).

*Media Properties, Inc., supra* at 133. Obviously, "contingent as to liability" must take on a distinct meaning in order to be in keeping with the history of the amendments.

In 1962, when it retained "contingent as to liability," Congress explained that persons holding those claims may not petition involuntarily because "the contingency of the bankrupt's obligation may be such as to render the claim incapable of proof. It may be dependent upon an event so fortuitous as to make it uncertain that liability will ever attach ..." H.R.Rep. No. 1208, 87th Cong., 1st Sess. 5, 6, *reprinted in* 1962 U.S. Code Cong. & Ad.News 2603, 2606. Nothing within § 303(b) clearly bars holders of unmatured, or unadjudicated claims from being eligible petitioners. *Accord In re All Media Properties, Inc., supra.* When, however, all the events have not occurred the claim is not accrued and its liability is contingent on a future happening which may not occur. Such is not the case here. The claim is accrued and, in fact, suit has been brought on it.

 It is only those unaccrued claims which are excluded from eligibility in involuntary petitions and not claims where, as here, the only remaining element for enforceability is a judgment. *In re Dill, supra; In re Walton Plywood, supra; In re North County Chrysler Plymouth, Inc.,* 13 B.R. 393 (Bkrtcy.W.D.Mo.1981). There is nothing extrinsic, fortuitous or contingent about lack of adjudication of a claim which makes it "contingent as to liability" as that phrase is interpreted through amendments to the bankruptcy laws and decisions.

This reasoning is rational for, otherwise, a debtor could defeat any involuntary petition by merely interposing a defense to a suit or a counterclaim. *See In re McNeil, supra; In re Duty Free Shops Corp.,* 6 B.R. 38 (Bkrtcy.S.D.Fla.1980). In light of the liberal definition of the term "claim" and the legislative history of § 303, and its predecessors, it would be inconsistent to permit a debtor to so easily defeat an involuntary petition unilaterally.

The debtor argues that *In re Lawton,* 119 F.Supp. 724 (D.S.D.W.Va.1954) holds that certain types of claims, while in litigation, are contingent as to liability. As debtor admits, however, when *Lawton* was decided requirements of "provability" and "being of a liquidated amount" were a requisite part of § 59b under the Bankruptcy Act of 1898. Moreover, that Act did not define "claim" in the broad sense which Congress used in the Bankruptcy Code. *Lawton* is, therefore, clearly distinguishable. As noted earlier there is nothing mysterious about an unadjudicated claim which rests in tort. It is no more remote than an unadjudicated claim for breach of contract and is no less contingent. In either case the bankruptcy court must make a determination based on facts before it whether there are future events necessary for a claim to accrue.

Accordingly, the motion to dismiss is denied and the debtor is directed to serve its answer within 10 days.

The debtor has also moved for abstention or suspension pursuant to § 305. That consideration requires a factual determination of the respective interests of creditors and the debtor, inappropriate on a motion to dismiss, and is denied without prejudice.

 The debtor has filed a notice of conversion from Chapter 7 to Chapter 11, which is conditioned upon whether the motion to dismiss is denied. *See* § 706(a). The debtor has an absolute right to convert and, as the motion to dismiss is denied, the case is converted from Chapter 7 to Chapter 11.

 Petitioners have moved for an interim trustee under § 303(g). Since the case has been converted to one under Chapter 11 that subsection is inappropriate and the motion is denied.

Pending final determination of whether an order for relief will be entered the business of the debtor is to be conducted under § 303(f) and other applicable provisions of Title 11.