In re Charles E. LAMBERT and Carole Ann Lambert, Debtors.

Bankruptcy No. 82C–02143.

United States Bankruptcy Court, D. Utah.

Oct. 22, 1984.

915

Scott A. Call, Moyle & Draper, Salt Lake City, Utah, for Petty Motor Lease, Inc. and Nupetco Associates.

Ronald C. Barker, Salt Lake City, Utah, for debtors.

Judith A. Boulden, Boulden & Gillman, Salt Lake City, Utah, trustee pro se.

## MEMORANDUM OPINION

GLEN E. CLARK, Bankruptcy Judge.

### CASE SUMMARY

In this case, the court is asked to determine whether or not unsecured debts which are disputed by the debtor, should be added to the sum of noncontingent, liquidated, unsecured debt for purposes of determining Chapter 13 eligibility. Section 109(e) of the Bankruptcy Code requires that only "noncontingent" and "liquidated" debts be counted for eligibility purposes. For the reasons hereinafter set forth, it is the opinion of this court that a debt whose liability or amount is disputed is "unliquidated" within the meaning of Section 109(e) and should not be included in the eligibility calculation. Because these debtors' unsecured debts to Petty Motor Lease and Nupetco Associates are disputed and unliquidated, they should not be added to the sum of liquidated noncontingent unsecured debt for purposes of ascertaining debtors' eligi-

bility for filing their Chapter 13 petition. Therefore, creditors' Motion to Dismiss or Convert for lack of eligibility is denied in order to allow the parties to resolve in district court their lawsuit over the validity of the disputed debts.

## JURISDICTION

The court has jurisdiction over this matter under 28 U.S.C. § 157, and pursuant thereto holds that this is a "core matter" as that term is defined in 28 U.S.C. § 157(b)(1) and exemplified in 28 U.S.C. § 157(b)(2)(A), –(B), –(J), and –(O).

## FACTS OF THE CASE

On August 25, 1982, Charles E. Lambert and Carole Ann Lambert filed a joint petition under Chapter 13. Their schedules show unsecured debts totaling $146,471.86. However, out of this total, the debtors subtracted disputed debts in the sum of $69,-161.00, which leaves the sum of $77,310.78, representing their undisputed, noncontingent, liquidated, unsecured debt. It is upon this figure, $77,310.78, that the debtors predicated their eligibility for relief under Chapter 13, in accordance with the requirements of 11 U.S.C. 109(e).

On December 29, 1982, creditors Petty Motor Lease and Nupetco Associates, whose claims the debtors dispute, filed a Motion to Dismiss or Convert the case, under Code Section 1307, on the ground that the debtors are ineligible for relief under Chapter 13 because their total unsecured, noncontingent, liquidated debt exceeds the limit of $100,000.00 set by Section 109(e). These creditors assert that the debtors owe an additional $48,330.85 to Petty Motor Lease and an additional $61,-130.97 to Nupetco Associates, and that the grand total of debtors' unsecured debt is $186,772.60.

The discrepancy between the debtors' and creditors' totals was, in part, the subject of state court litigation in the Third Judicial District Court of Salt Lake County in which Petty Motor Lease and Nupetco Associates are plaintiffs and the debtors are defendants. That action was stayed by virtue of the filing of the Chapter 13 petition. From the affidavits before this court, it is possible to ascertain the general position of these litigants.

Neuman C. Petty, president of Petty Motor Lease, Inc. and the general partner of Nupetco Associates, negotiated an agreement whereby he would release his claims against the debtors if Lambert would assign to Petty the leases to two billboards located in Salt Lake City. Petty, however, insists that these negotiations broke down and denies ever entering into any agreement with Lambert. Instead, contends Petty, during initial discussions, he was told by Lambert to contact Heber Ridd, the lessor of the signs. Petty did this, and he and Ridd reached an agreement of their own that did not include Lambert.

Ridd substantiates Petty's position and adds that, upon the expiration of each of the leases and their respective options to renew, Ridd notified Petty of each expiration; and then Petty entered into independent leases with Ridd for each billboard.

Lambert, however, contends that Petty did more than merely negotiate a settlement. He claims that Petty agreed to assume Lambert's leases and to cancel his claims against the debtors. It is Lambert's position that he and Petty entered into a binding contract. But, according to Lambert, Petty breached this contract, thus adding to the financial troubles that propelled these debtors into bankruptcy.

After the commencement of the case, the debtors filed an adversary proceeding against Petty, (1) seeking a declaratory judgment establishing the existence between Petty and the debtors of a contract that, effectively, settled and discharged all of Petty's claims against the debtors, and (2) alleging against Petty causes of action for breach of contract, unjust enrichment, and conversion. On February 22, 1983, Petty filed in that proceeding a Motion to Dismiss, grounded on an objection to this court's post-*Marathon* jurisdiction. Because that motion does not turn upon any novel issues of law, but merely requires

this court to uphold its own post-*Marathon* jurisdiction on the basis of the interim "Emergency Rule" as upheld by the United States District Court for the District of Utah in *In re Color Craft Press, Ltd.*, 27 B.R. 962 (D.Utah 1983) and by the Tenth Circuit Court of Appeals in the case of *Oklahoma Health Services Federal Credit Union v. Webb*, 726 F.2d 624 (10th Cir.1984) and *Matter of Colorado Energy Supply, Inc.*, 728 F.2d 1283 (10th Cir.1984), the Motion to Dismiss shall be dispensed with in a separate ruling of the court.

Since February 22, 1983, several hearings on confirmation of the debtor's plan have been scheduled and continued, pending the outcome of the Motion to Dismiss or Convert.

Because the debtors demanded a jury trial of the facts raised in the adversary proceeding, this court entered a proposed pre-trial order therein and transferred that proceeding to the United States District Court for the District of Utah, Central Division, for trial.[1] That court re-transferred the case to this court for disposition of the Motion to Dismiss or Convert to Chapter 7 pending in the main case.

### ISSUE

In this case the court is asked to determine whether or not unsecured debts, disputed by the debtor, should be added to the sum of noncontingent, liquidated, unsecured debts for purposes of determining debtors' Chapter 13 eligibility under Section 109(e).

### DISCUSSION

*Introduction*

The eligibility requirements for debtors seeking relief under Chapter 13 of the Code are found in Section 109(e), which provides that:

> Only ... an individual with regular income and such individual's spouse ... that owe, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $100,000 ... may be a debtor under chapter 13 of this title.

This provision is not in any pertinent way illuminated by the legislative history of the Code.[2] Therefore, if the court is to interpret properly this provision, it must look to the circumstances out of which this Chapter 13 case arose and to the fundamental social policies that undergird the whole of this country's modern bankruptcy apparatus as embodied in the Bankruptcy Reform Act of 1978 and the amendments thereto.[3]

A number of courts have dealt with the issue of Chapter 13 eligibility, resulting in a split in the opinions. The majority of these courts take the position that debtors seeking Chapter 13 relief are required by Section 109(e) to include in their eligibility computations even those debts that are disputed. *See, e.g., In re Sylvester*, 19 B.R. 671 (9th Cir.Bky.App.Panel 1982); *In re McMonagle*, 30 B.R. 899 (Bky.D.S.Dak. 1983); *In re Blehm*, 33 B.R. 678 (Bky.D. Colo.1983); and *In re Vaughan*, 36 B.R. 935 (D.N.D.Ala.1984).

A minority of courts hold that only those disputed debts that are clearly noncontingent and liquidated are to be counted. *See, e.g., In re Troyer*, 24 B.R. 727 (Bky.N.D. Ohio 1982); and *In re DeBrunner*, 22 B.R. 36 (Bky.D.Neb.1982).

One court has held that disputed debts should not be included in the eligibility

---

1. Subsection (d) of the Emergency Rule then in effect provides:

 The bankruptcy judges may perform in referred bankruptcy cases and proceedings all acts and duties necessary for the handling of those cases and proceedings except that the bankruptcy judges may not conduct:

 . . . . .

 (D) A trial by jury.

2. *See,* 124 Cong.Rec. H11091 (Sept. 28, 1978) and H.Rep. No. 95–595 at p. 119. *See also,* the

discussion of legislative history of Section 109(e) in *In re Ballard,* 4 B.R. 271 at 273–84 (Bky.E.D.Va.1980).

3. The Bankruptcy Code is to be liberally construed to give debtors the full measure of relief afforded by Congress, and all ambiguities will be resolved in favor of debtors. *See, Wright v. Union Central Life Insurance Co.,* 311 U.S. 273, 278–79, 61 S.Ct. 196, 199–200, 85 L.Ed. 184 (1940).

tally until, and only to the extent that, the dispute is resolved in favor of the creditor and against the debtor. *See, In re King*, 9 B.R. 376 (Bky.D.Ore.1981).

In reaching its interpretation of Section 109(e) and in determining how disputed debts should be treated for eligibility purposes within the context of the present case, this court will address the following preliminary questions before treating the ultimate eligibility issue presented here. With regard to the provisions of Section 109(e):

(1) What is the significance of the use of the term "debts" as opposed to the term "claims"?

(2) What is the significance of the absence of the terms "disputed" and "undisputed"?

(3) What is the relationship among the terms "noncontingent," "liquidated," and "disputed"?

(4) What is the meaning of the term "liquidated"?

(5) What is the meaning of the term "noncontingent"?

(6) When, why and how should a Chapter 13 eligibility hearing be conducted by the court?

### (1) "Debts" vs. "Claims" in Section 109(e).

In reviewing the eligibility requirements for Chapter 13 debtors, it is important to emphasize that it is the "debt" and not the "claim" which must be noncontingent and liquidated. For Section 109(e) speaks of "debts" not "claims." Elsewhere this court has commented on the relationship between "claims" and "debts" under the Code. *See, In re John Clay*, 43 B.R. 797 at 808 n. 10 (Bky.D.Utah 1984); and *In re Independent Clearing House Company*, 41 B.R. 985, 12 B.C.D. 44 (Bky.D.Utah 1984).

It is the opinion of this court that, in certain contexts in the Bankruptcy Code, the terms "debt" and "claim" function more or less as synonyms; in such instances, the two terms refer to a single obligation as seen from the point of view of the debtor and the creditor, respectively. In other instances, however, "claim" and "debt" have different meanings: "claim" has a broader significance, referring to a creditor's demand for payment, regardless of the existence or validity of the underlying obligation or to the accuracy of the amount demanded, while "debt" has a narrower significance, referring not to the creditor's claim, but either to (1) the actual obligation to pay as it exists in the contemplation of applicable law, or (2) to the obligation to pay as asserted by the debtor in the bankruptcy schedules. *See, In re King, supra*, at 378.

This proposition finds further support in the case of *In re Covey*, 650 F.2d 877 (7th Cir.1981), which involved an involuntary petition filed by three creditors naming Covey Dodge as the debtor in bankruptcy. On appeal, Covey argued *inter alia* that the creditors who petitioned for involuntary relief did not qualify under Section 303(b)(1) of the Code for the reason that they did not hold against the debtor noncontingent claims aggregating at least $5,000.00.

The issue before the *Covey* court pertinent to the present case was whether claims disputed by the debtor were contingent or noncontingent within the meaning of Section 303(b)(1). The creditors argued that a mere dispute raised by the debtor did not render contingent an otherwise noncontingent claim. The debtor argued the contrary with the object of disqualifying the creditors as ineligible to file an involuntary petition.

The *Covey* court noted that Section 303(b)(1) is silent as to the calculation of "disputed" debts. It also noted the existence of "solid policy reasons in support of both creditors' and debtors' interests" and concluded that "there cannot be any absolute rule that disputed debts either should or should not be considered." *In re Covey, supra*, at 883. Instead, the court concluded that "the bankruptcy courts should initially examine the dispute and, under certain circumstances, should then balance the

interests of creditors and debtors with regard to the Code's specific goals of prompt resolution" of the case. *Id.* *See also, All Media Properties, Inc.,* 5 B.R. 126, 134–35 (Bky.S.D.Tex.1980). For the propositions noted, this court relies upon the decision in *Covey.*

However, the *Covey* case is in certain other important respects different from the present case. In *Covey,* it was the creditors' eligibility to file an involuntary petition that was challenged under Section 303(b)(1). In this case, it is the debtors' eligibility to file a Chapter 13 petition that is challenged under Section 109(e). In *Covey,* the decision turned on the disposition of the *disputed claims.* In this case, the decision turns upon the disposition of the *disputed debts.* In *Covey,* the court liberally interpreted the provisions of Section 303(b)(1) so as not to unnecessarily obstruct the eligibility of creditors desiring to file involuntary petitions. It is the opinion of this court that, in like fashion, the provisions of Section 109(e) should be liberally interpreted so as not to unnecessarily obstruct the eligibility of debtors desiring relief under Chapter 13. In *Covey,* the court found that *disputed claims should and would be counted* as noncontingent in determining if there existed three or more petitioning creditors with claims aggregating at least $5,000.00. By the same token, it is the opinion of this court that, in most cases and for the reasons set forth hereafter, *a disputed debt should not be counted* as a liquidated debt in determining whether a debtor's noncontingent, liquidated, unsecured debt exceeds the sum of $100,000.00, for purposes of establishing eligibility for Chapter 13 relief under Section 109(e).

By applying the *Covey* rationale, this court arrives at a treatment of disputed debts under Section 109(e) that is opposite to that prescribed in *Covey* for the treatment of disputed claims under Section 303(b)(1). However, this contrary conclusion is reached by adhering strictly to the same principles enunciated by the *Covey* court. The contrary result is due to the fact that Section 303(b)(1) speaks of *disputed claims* and deals with the *eligibility of creditors,* while Section 109(e) speaks of *disputed debts* and the *eligibility of debtors.* Thus, in *Covey* disputed claims were counted to facilitate creditor eligibility to file involuntary petitions. Here disputed debts are not counted to facilitate debtor eligibility to file petitions under Chapter 13.

Furthermore, it is the opinion of this court that Congress made a conscious choice when it employed the term "debt" instead of "claim" in the context of Section 109(e). "Debt" was used because Congress intended a Chapter 13 debtor's eligibility to rest upon either (1) the actual obligation to pay as it exists in the contemplation of applicable law or (2) the obligation to pay as asserted to the court by the debtor in its schedules or otherwise. The term "claim" was avoided because the Congress did not wish the Section 109(e) eligibility determination for Chapter 13 debtors to be predicated upon the mere demands of creditors.

**(2) Section 109(e) and Disputed Debts.**

In the present case, the creditors, Petty Motors Lease and Nupetco Associates argue that the absence in Section 109(e) of the terms "disputed" and "undisputed" constitutes evidence that Congress intended Chapter 13 debtors to include all disputed debts in their eligibility tallies. This argument has been made and accepted in a number of other cases.[4]

This court rejects this problematical position because it rests upon an implication of Congressional intent that cannot reasonably be inferred from the statute. In Section 109(e) Congress expressly requires that only "noncontingent" debts be counted for eligibility purposes; it follows that had Congress intended that only "undisputed" debts be counted, it would have communi-

---

**4.** *In re DeBrunner, supra; In re McMonagle, supra; In re Blehm, supra;* and *In re Vaughan,* *supra.*

cated that intent by including the term "undisputed" in the statute, just as it had included the term "noncontingent." By the same token, Section 109(e) expressly requires that all "liquidated" debts be counted for eligibility purposes; it also follows that had Congress intended all "disputed" debts to be counted, it would have likewise communicated that intent by expressly including in the statute the term "disputed," just as it had included the term "liquidated."

 But as a matter of fact, Section 109(e) contains no reference to "undisputed" or "disputed" debts. Therefore, the intent of Congress cannot logically be inferred because none is implied. If a piece of evidence gives rise to two equally weighted and equally viable inferences, then either inference is equally probable. So it is here, where Congress' silence could be construed to imply with equal force that, on the one hand, all "disputed" debts and, on the other hand, only "undisputed" debts should be counted for eligibility purposes. For this reason, this court concludes that the absence of the terms "disputed" and "undisputed" from Section 109(e) of the Code is without probative significance and, therefore, cannot be relied upon in reaching an interpretation of this provision.[5]

### (3) Noncontingent, Liquidated, and Disputed Debts.

The relationship among "noncontingent," "liquidated," and "disputed" debts within the context of the Section 109(e) Chapter 13 eligibility provisions has not been fully addressed by any court. However, a partial treatment of this relationship was made in *In re Sylvester, supra* and in *In re Vaughan, supra.*

In *Sylvester*, the court concluded that the terms "noncontingent," "liquidated," and "disputed" had different meanings. The court did not give its reasons for this conclusion, nor did it discuss the meanings of these terms and how they might overlap and intertwine.[6]

The court in *Vaughan* not only held that the absence of the term "disputed" from Section 109(e) indicated that Congress had intended disputed debts to be included (the position this court has already rejected), but it also held that the terms "noncontingent," "liquidated," and "disputed" had different and, perhaps, mutually exclusive meanings. But the court gave no rationale for this conclusion. The court, however, did address the debtor's argument that a debt should be considered "unliquidated", and therefore excludable for eligibility count purposes, when either the amount of the debt or the underlying debt liability is disputed. The *Vaughan* court refused to adopt this view because it believed that to allow debtors to exclude from the eligibility tally all disputed debts on grounds that the disputes render the debts unliquidated would encourage debtors to dispute debts in order to come within the eligibility limits. However, the *Vaughan* court did not deal with the opposite problem that might arise if debtors were required to count all disputed debts, namely the problem created by creditors who might, wittingly or unwittingly, assert false or inflated claims in order to prevent a debtor from obtaining Chapter 13 relief. By failing to consider both horns of this dilemma, the *Vaughan* court's conclusion, that disputed debts must always be included in the eligibility count required by Section 109(e), creates an unwarranted presumption against the debtor and in favor of the creditor.

Both the *Sylvester* and *Vaughan* cases contain rationales too sparse and shaky to

---

**5.** *In re Sylvester, supra; In re Vaughan, supra; In re Blehm, supra; In re DeBrunner, supra;* and *In re McMonagle, supra.*

**6.** The *Sylvester* court also held that disputed debts must be counted for Chapter 13 eligibility purposes because to do otherwise would violate the express language of Section 109(e). How-

ever, as has already been noted, Section 109(e) contains no express language with regard to "disputed" or "undisputed" debts; the legislative history of this provision contains no clarification of Congressional intent in leaving out those terms; and no inference can be drawn from Congress' silence.

support any other opinion but their own. For this reason, this court will not follow them nor any case relying upon them for the propositions (1) that "noncontingent," "liquidated," and "disputed" are terms with distinct, if not mutually exclusive, meanings and (2) that disputed debts must be included in the Section 109(e) eligibility count. In the opinion of this court, the terms "noncontingent," "liquidated," and "disputed," as they relate to Section 109(e) of the Code are labels for concepts that so overlap and intertwine that the distinction among them is apt to become quite blurred. And, what is more, the resolution of the question of whether or not disputed debts should be counted for Chapter 13 eligibility purposes will depend upon how these concepts impact upon a given dispute. For this reason a closer analysis of the meanings of these terms is necessary.

**(4) Liquidated and Unliquidated Debts.**

 Within the meaning of Section 109(e), a "liquidated" debt is one whose dollar amount (1) is determined, fixed, settled, adjusted, and made certain mathematically and with precision, (2) is agreed upon, or (3) is fixed by operation of law. *In re King, supra,* at 378. In short, a "liquidated" debt is one that is certain both as to amount and liability. This court holds that a debt cannot be certain to the extent there is a bona fide dispute as to its amount or as to the underlying liability of the debtor to pay the debt. *Id.*

 If there arises a dispute as to the underlying liability of the debtor, then the entire debt is unliquidated until the liability is determined by a court of competent jurisdiction. It should be noted, however, that a dispute over liability can present itself in a number of ways. For example, a creditor and debtor may dispute whether or not there existed a "contingency," i.e., a condition precedent, that had to be discharged before liability arose. Or, given that a contingency existed, the parties may dispute whether or not it was actually discharged. Or, they might disagree over the existence of the underlying obligation creating the liability to pay. Thus, a dispute

as to liability may raise questions regarding "contingency." In *Vaughan,* the court stated that the terms "liquidated" and "disputed" were separate and distinct. *In re Vaughan, supra,* at 938. But clearly this conclusion is wrong. If, for example, a dispute arose over the existence of a contingency and if it were determined that the contingency existed but had not been discharged, then there would be no liability on the debt—the debt would be "unliquidated" within the meaning of Section 109(e). In such a case, all three concepts, "noncontingent," "unliquidated," and "disputed," would be present not as separate and distinct concepts, but as interlinking and interdependent ones.

 If there arises a dispute as to the amount of the debt, the debt is also "unliquidated," but only to the extent it is disputed. That is, that portion of the debt which the debtor and the creditor agree is owing is "liquidated," but that portion which they dispute is "unliquidated" because it cannot be fixed, settled, adjusted and made certain mathematically and with precision. *In re King, supra,* at 378–79.

 It is also important to note that a dispute based upon a debtor's claim of an offset against a creditor is not in itself a dispute over debt liability or amount. It is a dispute over the existence, validity, or amount of a second and independent debt raised and asserted as an offset in an attempt to reduce the amount of the first debt. The assertion of a second debt as an offset will not render the first debt unliquidated because the offset claim creates no uncertainties with regard to the liability underlying or the amount due upon the first debt. For this reason, the court was correct in *In re Troyer, supra,* when it held that a disputed debt will still be counted for Section 109(e) eligibility purposes if the dispute amounts merely to the assertion of a claim for an offset. *See also, In re Vaughan, supra.*

 In order to "liquidate" the "unliquidated," within the meaning of Section 109(e), the court must resolve—as far as

feasibly possible—any substantial issues of law or fact attending either the determination of the amount of the debt or the liability giving rise thereto, as the case may require. Until those substantial uncertainties are resolved, the debt will remain "unliquidated" and should not be included in the Section 109(e) tally required for determining the eligibility of debtors for Chapter 13 relief.

**(5) Contingent and Noncontingent Debts.**

The meaning of "contingent" and "noncontingent"—when applied to debts—was set forth in the case of *All Media Properties, Inc.*, 5 B.R. 126 (Bky.S.D.Tex.1980) *aff'd per curiam*, 646 F.2d 193 (5th Cir. 1981). That case involved two involuntary Chapter 11 petitions, filed under the 1978 Code and consolidated by consent of the parties. The court was required to interpret and apply Section 303(b)(1) of the Code, which provides that "an involuntary petition may be brought by three or more entities, each of which is a holder of a claim against the alleged debtor that is not contingent as to liability." *All Media Properties, supra*, at 131; *cf. In re Covey, supra.* The court determined that Section 303(b)(1) allows the holders of any types of claims enumerated in Section 101(4)(A) to qualify as a creditor "unless his claim is contingent as to liability." *All Media Properties, supra*, at 131. The debtors argued that a creditor with an unmatured or disputed claim did not qualify as a petitioning creditor under Section 303(b)(1) because such claims are "contingent in the sense that they are not, at the time of filing the petition, fixed or liquidated or now owing but rather that such claims required further proceedings or the passage of time" before liability arises. *Id.* at 132.

■ This court concurs with the *All Media Properties Inc.* court's rationale and conclusion that a claim is "contingent as to liability if the debt is one which the debtor

will be called upon to pay only upon the occurrence or happening of an extrinsic event which will trigger the liability of the debtor to the alleged creditor and if such triggering event or occurrence was one reasonably contemplated by the debtor and creditor at the time the event giving rise to the claim occurred." *Id.* at 133.

The court, in *All Media Properties, supra*, gave as an example of classic contingent liability the case of a guarantor of a promissory note executed by a third party, where both the creditor and the guarantor knew that the liability of the guarantor would be triggered if and when the third party defaulted. The court also gave as an additional example the case of the commission of an alleged wrongdoing, where it is presumed to have been contemplated by the parties that the alleged tortfeasor would be liable only if and when his act or omission were established as a tort and damages determined by a competent tribunal.[7] The court also stated, in order to make itself perfectly clear, that where a contract was entered into by parties who did not contemplate that any further act had to be completed in order to trigger contractual liability, then such liability would not be contingent. Even though "subsequent events might lead to a dispute as to liability," that dispute would not render the debt arising on the contract a contingent one. In such a situation, the "claim is disputed, but not contingent," because "no outside event is necessary to bring the obligation into existence." *Id.* at 133.

■ What is to be gleaned from the opinion of the *All Media* court is the principle that a debt is "contingent" if the debtor's legal duty to pay, i.e., his liability,[8] does not come into existence until triggered by the occurrence of a future event that was reasonably within the presumed contemplation of the parties at the time the

---

7. *Contra, see, In re Longhorn 1979–II Drilling Program*, 32 B.R. 923 (Bky.W.D.Okla.1983).

8. "In this connection, 'liability' does not mean the same as judgment or remedy, but only a

condition of being obligated to answer for a claim." *In re Longhorn 1979–II Drilling Program, supra*, at 927.

original relationship between the parties was created.

■ However, a distinction must be drawn between a contingent obligation and an unmatured obligation. With an unmatured obligation, the right to payment exists from the outset, but the time of payment is deferred. The maturation occurs with the mere passage of time as the date of payment draws nearer. But no outside, future occurrence in the contemplation of the parties is necessary to trigger the underlying obligation to pay. *Id.* at 133.

■ For all these reasons, this court concludes that a debt is not automatically rendered "contingent" solely by virtue of its being disputed. *See, In re Dill,* 30 B.R. 546 (Bky.App.Pan. 9th Cir.1983); *In re Blehm, supra. See also, In re New Mexico Properties, Inc.,* 18 B.R. 936 (Bky.D.N. M.1982); *All Media Properties, Inc.,* 5 B.R. 126 (Bky.S.D.Tex.1980).

It follows then that disputes may arise over noncontingent debts or over contingent debts. When a disputed debt is contingent at the time of the filing of the Chapter 13 petition, it may not be counted for eligibility purposes because of the Section 109(e) prohibition against contingent debts. *See In re Kutner,* 3 B.R. 422 (Bky. N.D.Tex.1980). Thus, only those disputed debts that are *noncontingent* at the time the Chapter 13 petition is filed are to be counted in the eligibility tally [9] unless, of course, the existing dispute is over the liability underlying the debt or the amount of the debt—either of which disputes would render an otherwise noncontingent debt unliquidated within the meaning of Section 109(e).

■ As this court has already suggested, a bona fide dispute over the existence or discharge of a contingency giving rise to ultimate liability on a debt is really a dispute over the existence or nonexistence of the debt itself. In such a case if it is found that a contingency exists and has not been discharged, then the debtor has no liability. The debt does not yet exist. Or, in other words, the debt is "unliquidated" as to liability and cannot be counted for eligibility purposes. But if it is found that the contingency does not exist or has been discharged, then the debt is liquidated as to liability and can be counted for eligibility purposes, unless there exists a further bona fide dispute over the amount of the debt (a situation which has already been discussed).[10]

**(6) The Section 109(e) Chapter 13 Eligibility Hearing.**

■ One important policy of the Bankruptcy Code is to assure the debtor a "fresh start." Another is to bring about a result that is "in the best interest" of all creditors. These competing policies suggest that, in determining a debtor's eligibility for Chapter 13 relief, the court—when faced with the question of whether or not to count disputed debts in the eligibility tally required by Section 109(e)—should not rely solely upon the proofs of claim and other documentation of the creditor without subjecting them to a trial or hearing on the merits, complete with all the evidentiary and procedural safeguards which such a proceeding would provide, so that the creditor's version of the dispute is not favored.

■ In the opinion of this court, Section 109(e) requires the bankruptcy court to cause a hearing to be held, if such can be done without causing undue delay in the administration of the case, in the event a question is raised, by the court or a party in interest, as to a debtor's qualifications for Chapter 13 relief.

Because such a hearing involves the ultimate question of the court's authority [11] to grant the debtor relief under Chapter 13 by

---

**9.** *See In re Troyer, supra;* and *In re DeBrunner, supra.*

**10.** See the section entitled "Liquidated and Unliquidated Debts," *supra.*

**11.** The question remains open as to whether or not the debtor's ineligibility under Section 109(e) deprives the court of all jurisdiction to grant relief under Chapter 13. *See, In re King, supra,* and *In re Blehm, supra.*

assuring that the eligibility requirements of Section 109(e) are met, the court can require such a hearing on its own motion or on motion or objection of a party in interest.

A majority of courts have either expressed the need for such a hearing or have resorted to one without articulating a rationale. *See, In re Sylvester, supra; In re Blehm, supra;* and *In re Carson,* 32 B.R. 27 (Bky.S.D.Fla.1983). *See also, In re Prince,* 5 B.R. 432 (Bky.W.D.N.Y.1980); *In re Kelsey,* 6 B.R. 114 (Bky.S.D.Tex.1980); *In re Walters,* 11 B.R. 567 (Bky.W.D.W.Va. 1981); and *In re Falherty,* 10 B.R. 118 (Bky.N.D.Ill.E.D.1981). Some of these courts have also expressed concern over the delay which such a proceeding might cause in the administration of the case.

■ It is the opinion of this court that, if a determination of a disputed debt cannot be made expeditiously, then the court should rely upon the characterization of the disputed debt as set forth by the debtor in its schedules. This latter approach is an acceptable alternative to holding a hearing on the disputed debt because of the provisions of Section 502(c), which permit a bankruptcy court to estimate for the purpose of allowance "any contingent or unliquidated claim, fixing or liquidation of which, as the case may be, would unduly delay the closing of the case." Section 502(c). In the opinion of this court, the term "claim" as used in Section 502(c) of the Code is to be understood to refer also to "debts" within the meaning of Section 109(e). Taken together, Sections 502(c) and 109(e) require the court, in the event an eligibility hearing would cause undue delay in the administration of the Chapter 13 case, to rely upon the debtor's over the creditor's version of the facts, in reaching an estimate of the amount of the disputed debt. Moreover, this alternative accords with the underlying policy of the Code of affording the debtor a fresh start by not unnecessarily impeding his obtaining Chapter 13 relief, and with the underlying policy of the Code to take into account "the best

interest" of all the creditors, and not merely a favored few.

In the face of an eligibility challenge based upon the disposition of disputed debts, where a hearing can be held without undue delay, the court must first determine if the inclusion of the disputed debts into the eligibility count would effect the debtor's eligibility for Chapter 13 relief. If so, then the court must proceed with the hearing to determine whether or not the disputed debts are noncontingent and liquidated. If, as a result of the eligibility hearing, a disputed debt is found to be both noncontingent and liquidated (e.g., if the dispute deals with a setoff against a creditor's claim), the disputed debt should be counted for eligibility purposes. If the disputed debt is found to be contingent, it should not be so counted regardless whether or not it is liquidated. If, however, a noncontingent disputed debt is found to be unliquidated— that is, if there exists a dispute as to the liability on or the amount of the debt—then the court must allow the parties an opportunity for a hearing on these issues before a competent tribunal, in order to liquidate the disputed debt(s).

## DECISION

In reaching its decision in this case, this court is aware that it is contravening the majority view and adopting, to a considerable extent, the position of the court in *In re King, supra.* It does this only after satisfying itself that, on this issue, the strength of the majority lies in numbers alone. The fuller, clearer, stronger, and therefore more compelling principles of law were announced by the *King* court.

In applying the law to the facts of this case, this court holds that the obligations which form the basis of the claims of creditors Petty Motor Lease, Inc. and Nupetco Associates constitute debts over which there are bona fide and substantial disputes and which, by virtue of these disputes, are "unliquidated" within the contemplation of Section 109(e) of the Code.

Under the principles enunciated here, this court is obligated either (1) to see that

this dispute is resolved in a hearing, noticed on its own motion or objection or on that of a party in interest and conducted for the purpose of adducing evidence in order to determine, fix, settle, adjust, and make certain mathematically and with precision the debtor's liability on and the amount of the disputed debts, or (2), in the event such a proceeding would cause undue delay in the administration of the case, to accept, for purposes of Chapter 13 debtor eligibility, the debtor's characterization of the disputed debt as set forth to the court in the bankruptcy schedules or otherwise.

In making its decision, this court takes into account that there is pending in the United States District Court for the District of Utah, Central Division, an adversary proceeding, commenced in this court but transferred to the district court so that debtor's case could be tried before a jury in a court of competent jurisdiction,[12] in which the disputed issues of fact regarding the debtor's obligation to Petty Motor Lease, Inc. and Nupetco are to be resolved. Moreover, the district court has requested this court to determine Petty's Motion to Dismiss or Convert, made in the main case, and its Motion to Dismiss, made in the adversary proceeding, so that the adversary proceeding may go forward. In light of this procedural posture, it is the decision of this court, for the reasons set forth herein, that the Motion to Dismiss or Convert, made by Petty in the main bankruptcy case, be denied in order to allow the district court to resolve the dispute between the parties to the adversary proceeding. This court will maintain jurisdiction over the main case pending the disposition of the adversary proceeding. Meanwhile, no Chapter 13 relief will be accorded to the debtors in this case until their eligibility for Chapter 13 relief can be finally determined in light of the district court's judgment.

The debtor's attorney shall prepare and submit to the court an order consistent with this opinion, approved as to form by the attorney for the creditors Petty Motor Lease, Inc. and Nupetco Associates.

---

**12.** *See,* note 1, *supra.* Perhaps, under the U.S. Bankruptcy Code, as amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984 (P.L. 98–353, July 10, 1984) the Utah District Court could refer this adversary proceeding back to this court for trial by jury.